**UNITED STATES of America, Appellee,**

v.

**Melvin L. SCHUTTERLE and Martha E. Schutterle, Appellants.**

No. 78–1239.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 20, 1978.

Decided Oct. 25, 1978.

Stephen Bennett, North Little Rock, Ark., for appellants.

Wilbur H. Dillahunty, U. S. Atty., and Richard Pense, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before HEANEY, STEPHENSON and HENLEY, Circuit Judges.

PER CURIAM.

Melvin L. Schutterle and Martha E. Schutterle were each convicted on three counts of wilful failure to file income tax returns for the years 1973, 1974 and 1975, in violation of 26 U.S.C. § 7203 (1976). Both defendants were fined $100 and sentenced to twenty-one days imprisonment followed by two years probation. On this direct appeal they contend: (1) that the District Court erred in denying their motion to suppress evidence obtained pursuant to an Internal Revenue Service summons, and (2) that there was not sufficient evidence of income for the year 1975 to support their convictions on Count V. We affirm.

## I.

### The Motion to Suppress.

For the year 1973, Mr. and Mrs. Schutterle filed an income tax return showing only their names, address and social security numbers, and claiming a Fifth Amendment privilege as to all other information. This return triggered an IRS investigation. In the course of this investigation, on June 4, 1975, Special Agent Charles D. Huckabee, pursuant to 26 U.S.C. § 7602 (1976),[1] issued a summons to the President of the Bank of Eureka Springs, Arkansas, for all account records concerning the Schutterles. This summons was judicially enforced, pursuant to 26 U.S.C. § 7604 (1976), by order of the District Court on August 25, 1975.

In May of 1977, the Schutterles were charged with wilful failure to file tax returns for the years 1973, 1974 and 1975.[2] Prior to trial the Schutterles moved to suppress all evidence obtained pursuant to the IRS summons. At a hearing on the motion Special Agent Huckabee and former IRS agent Danny Downing testified. The testimony was that the investigation of the Schutterles was begun in October of 1974 by the Intelligence Division. As a Special Agent, Huckabee was assigned to determine potential criminal violations. In December of 1974, Agent Downing was also assigned to the case to determine any civil tax liability or penalty. The investigation was conducted jointly and reports were eventually completed regarding the civil tax liability of the Schutterles as well as regarding their criminal tax liability. Agent Huckabee recommended criminal prosecution to the Regional Counsel of the IRS in October, 1976. The IRS recommendation was forwarded to the Department of Justice on December 6, 1976.

After hearing the evidence the District Court denied the motion to suppress, finding that the summons was issued in good faith and prior to any recommendation for criminal prosecution. The case proceeded to trial and certain records from the Bank of Eureka Springs were entered into evi-

---

1. § 7602. *Examination of books and witnesses.*

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

\* \* \* \* \* \*

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax \* \* \* to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry[.]

2. Count I charged Melvin Schutterle with failure to file for the year 1973. Count II charged Martha Schutterle with failure to file for 1973. Count III charged Melvin Schutterle for 1974. Count IV charged Martha Schutterle for 1974. Count V charged both Melvin and Martha Schutterle for 1975.

dence by stipulation of counsel. The jury found the Schutterles guilty on all counts.

The Schutterles contend that the District Court erred in denying their motion to suppress evidence obtained pursuant to the IRS summons. They make two arguments: (1) Enforcement of the summons was an abuse of process because the sole objective in issuing it was to obtain evidence for criminal prosecution; (2) They were constitutionally entitled as a matter of due process to notice and a hearing prior to judicial enforcement of the summons.

Preliminarily, we note that there is conflict among the Courts of Appeals on the question of whether or not a taxpayer has standing at trial to attack the validity of a § 7602 summons issued to a third party and to have evidence obtained from an improper summons suppressed. *Compare United States v. Sand*, 541 F.2d 1370 (9th Cir. 1976), *cert. denied, sub nom. Scully v. United States*, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 553 (1977) (taxpayer lacks standing) *with United States v. Genser*, 582 F.2d 292 (3d Cir. 1978) (taxpayer has standing and suppression is appropriate remedy when abuse is found). This Court has not previously considered the issue and it is not briefed by the parties herein.

We do not find it necessary to decide the question in the context of this case. For the purpose of this appeal only, we assume, *arguendo*, that defendants have standing to challenge the summons at trial. However, we find no abuse of process.

■  The use of a § 7602 summons procedure is proper in aid of a tax investigation with both potential civil and criminal consequences. *United States v. LaSalle National Bank*, —— U.S. ——, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978); *Couch v. United States*, 409 U.S. 322, 326, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); *United States v. Troupe*, 438 F.2d 117 (8th Cir. 1971). It is, however, an abuse of the summons procedure to use it exclusively for criminal investigation purposes. *United States v. LaSalle National Bank, supra* at 236 n. 18; *Donaldson v. United States, supra*, 400 U.S. at 533, 91 S.Ct. 534. Judicial enforcement of the summons is proper only if it was issued in good faith,[3] before the Service has abandoned in an institutional sense civil tax determination or collection purposes,[4] and prior to any recommendation by the Service to the Department of Justice for criminal prosecution. *United States v. LaSalle National Bank, supra*, —— U.S. at ——, 98 S.Ct. at 2367, 57 L.Ed.2d at 236.

*LaSalle* was handed down after trial in this case. Nevertheless, remand is not required as there is sufficient evidence in the record from which this Court may conclude that the *LaSalle* tests were met.[5]

---

**3.** Several elements of good faith were identified by the Court in *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). However, outside of their central claim that the summons was issued for improper, exclusively criminal purposes, the Schutterles do not allege a lack of good faith on the part of the Service.

**4.** As explained by the Court, the motives of an individual agent do not control. Rather, the purposes of the institution as a whole must be considered. The information required to establish criminal liability and to establish civil tax liability is substantially the same. Thus, even if an investigation is conducted solely by a special agent to discover criminal violations, the information he obtains is subject to several layers of agency review and may be used by the Service to impose civil penalties as well. As long as this remains possible, the Service as an institution has not abandoned civil tax pur-

suits. In order to prove the absence of good faith civil tax purposes, the party opposing enforcement must show, for example, that the IRS deliberately delayed recommending prosecution, after making an institutional commitment to prosecute, in order to use the summons to gather further evidence for prosecution. This imposes a heavy burden of proof on the party opposing enforcement. *United States v. LaSalle National Bank*, —— U.S. at ——, 98 S.Ct. at 2368, 57 L.Ed.2d 221, 234–36 (1978).

**5.** Previously, the test was stated as whether the summons was "issued in good faith and prior to a recommendation for criminal prosecution." *Donaldson v. United States*, 400 U.S. 517, 536, 91 S.Ct. 534, 545, 27 L.Ed.2d 580 (1971). *LaSalle* did not change the test. It merely clarified that the purposes of the institution and not of the individual agent control in determining whether the summons was issued in good faith

The Schutterles argue that the fact a special agent was involved proves that the investigation was for solely criminal purposes. This argument was expressly rejected in *Donaldson v. United States, supra,* 400 U.S. at 535–36, 91 S.Ct. 534. The undisputed evidence is that the Service investigated the Schutterles' potential civil tax liability as well as their criminal liability. The summons was issued and enforced more than one year before Agent Huckabee, in October, 1976, concluded his investigation by recommending criminal prosecution to the agency. The Service's recommendation to the Justice Department followed in December, 1976. This precludes any inference that the agency deliberately delayed recommending prosecution to the Justice Department, after making an institutional commitment to do so, in order to use the summons for impermissible purposes. *See United States v. LaSalle National Bank, supra* and n. 4, *supra.*

■ In sum, the record indicates that at the time the summons was enforced the IRS had not abandoned civil tax pursuits and had not committed itself to prosecution. We, therefore, reject the Schutterles' claim of abuse of process.

Effective February 28, 1977, a taxpayer under investigation is entitled to notice of a third party § 7602 summons and has the right to intervene in the enforcement proceeding. 26 U.S.C. § 7609 (1976). However, at the time the summons in the present case was issued, there was no such statutory requirement. The Schutterles argue that they were, nevertheless, constitutionally entitled as a matter of due process to notice and a hearing.

The central argument appears to be that notice and a hearing, including an opportunity for confrontation and cross-examination of witnesses, were required because the enforcement proceeding was solely for criminal prosecution purposes. To the extent that this is the basis of the argument it must fail, for, as discussed above, this premise is erroneous.[6] In any event, the Schutterles had adequate opportunity to challenge the accuracy of the evidence when introduced at trial.

■ The majority of courts that have considered the issue have held that the taxpayer is not entitled to notice and a hearing prior to enforcement of a § 7602 summons against a third party.[7] *Kelley v. United States,* 536 F.2d 897 (9th Cir. 1976), *cert. denied,* 429 U.S. 1047, 97 S.Ct. 756, 50 L.Ed.2d 762, *reh. denied,* 430 U.S. 911, 97 S.Ct. 1188, 51 L.Ed.2d 589 (1977); *Scarafiotti v. Shea,* 456 F.2d 1052 (10th Cir. 1972); *In re Cole,* 342 F.2d 5 (2d Cir.), *cert. denied,* 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965). *See United States v. Continental Bank and Trust,* 503 F.2d 45 (10th Cir. 1974) (dicta). *Contra, United States v. Benford,* 406 F.2d 1192 (7th Cir. 1969) (overruled in part by *Donaldson v. United States, supra* ); *United States v. First National Bank,* 399 F.Supp. 379 (D.Md.1975). Absent a protec-

---

for proper purposes, *see* n. 4, *supra,* and that the controlling date is the date the IRS recommends prosecution to the Justice Department, and not the date the agent recommends prosecution to the IRS. *United States v. LaSalle National Bank, supra,* —— U.S. at —— & n. 15, ——, 98 S.Ct. at 2365 & n. 15, 2368, 57 L.Ed.2d at 233 & n. 15, 236.

**6.** The Schutterles' reliance on *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1968), is inapposite. In *Jenkins,* the Court held that due process required that a person investigated by a state Labor Management Commission of Inquiry be given the opportunity to confront and cross-examine the witnesses against him. *Id.* at 429, 89 S.Ct. 1843. The rationale was that under state law the Commission investigated only criminal law

violations and exercised "a function very much akin to making an official adjudication of criminal culpability." *Id.* at 427, 89 S.Ct. at 1852. The Court specifically distinguished purely fact-finding, nonadjudicative, investigative proceedings in which no determination of civil or criminal liability is made. *Id.* at 426, 89 S.Ct. 1843. Thus, judicial enforcement of an IRS summons clearly does not fall within the *Jenkins* rule.

**7.** When, however, the summons is directed to the taxpayer himself to produce his own records, the taxpayer is, of course, entitled to challenge the summons at the enforcement stage. *See, e. g., United States v. Matras,* 487 F.2d 1271 (8th Cir. 1973); *United States v. Wright Motor Co.,* 536 F.2d 1090 (5th Cir. 1976).

tible liberty or property interest, the protections of procedural due process do not attach. The Schutterles clearly have no property interest in the business records of the bank. *See United States v. Miller*, 425 U.S. 435, 440, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976). We, therefore, reject the due process claim.

## II.

### *Evidence of Income for 1975.*

The only evidence of gross income for the year 1975 introduced by the government at trial was a bonus or commission payment from the Shaklee Corporation payable to the Schutterles jointly. Shaklee Corporation is a California-based manufacturer of food supplements, cosmetics and household cleaning aids. The products are marketed by a network of independent supervisors and distributors. Supervisors purchase the products directly from the home office and normally then sell them to distributors who, in turn, retail the products. Supervisors are free to make retail sales as well. Distributors may become supervisors by maintaining a certain volume of business over a period of time.

Supervisors purchase the goods from the company at a discount off the retail prices. In addition to whatever profit the supervisors and distributors may make on sales, the Shaklee Corporation pays bonuses or commissions to supervisors based on the volume of their purchases. Shaklee Corporation issues IRS Form 1099, recording these payments, to supervisors. This form is similar to a W–2 form, but instead of showing tax withheld it reports income paid to recipient.

Mr. and Mrs. Schutterle obtained a Shaklee distributorship in February, 1972. As supervisors in 1973, 1974 and 1975 they received bonus payments. For the year 1975 the payment was in the amount of $5,133.87. For that year married persons filing jointly were required to file if they had gross income of $3,400 or more; if filing separately, of $750 or more. There was no evidence that the Schutterles had any income from the sale of Shaklee products, or that they had ever in fact sold the products, either retail or to distributors.

The Schutterles contend that since the government failed to prove any sales, the evidence is that the Schutterles were the ultimate purchasers. Thus, they argue that the 1975 payment from Shaklee was nothing more than a discount or rebate on volume purchases of Shaklee products, and that a mere reduction in purchase price is not income to the purchaser.

This argument has previously been carefully considered and rejected by this Court. *See United States v. Allen*, 551 F.2d 208, 211–12 (8th Cir. 1977). *Accord, Commissioner of Internal Revenue v. Daehler*, 281 F.2d 823 (5th Cir. 1960); *Williams v. Commissioner*, 64 T.C. 1085 (1975). Although the *Allen* case involved a commission on the sale of real estate, the logic of that opinion applies with equal force to the facts of this case. The evidence is clear that the Shaklee Corporation markets its products through a network of local distributors. The products are sold to the distributor at the same price regardless of whether the distributor is also the ultimate purchaser. Unlike other purchasers, the distributor performs services for the corporation. It is in recognition of these services, and not as a reduction in purchase price, that the commissions are paid. Commissions are clearly included in gross income, 26 U.S.C. § 61(a)(1) (1976), and must be reported by the taxpayer. The Schutterles' claim that there was insufficient evidence of income for 1975 must, therefore, be rejected.

The District Court is affirmed.