UNITED STATES of America and
Richard D. Kaiser

v.

Patsy A. LADD,

Dobson Floors, Inc., Intervenor.

No. CA 3–78–1272–F.

United States District Court,
N. D. Texas,
Dallas Division.

April 3, 1979.

Kenneth J. Mighell, U.S. Atty., Dallas, Tex., for plaintiff.

John D. Copeland, Dallas, Tex., for Patsy A. Ladd.

Ronald L. Goranson, Dallas, Tex., for intervenor Dobson Floors, Inc.

## MEMORANDUM OPINION

ROBERT W. PORTER, District Judge.

On April 25 and again on May 25, 1978, Special Agent Richard Kaiser issued Internal Revenue civil summonses to Patsy A. Ladd as Secretary/Treasurer of Dobson Floors, Inc. (DFI). The summonses sought various records of DFI for the years ending 1974, 1975, and 1976.

The Internal Revenue Service's (IRS) investigation was initiated by an informant's tip that had been received by the Criminal Investigation Division (CID). The informant had suggested that DFI had not fully reported its sales for the taxable year ending July, 1976, and had tendered documents in support of the allegation. The case was referred to the Audit Division, where Revenue Agent Bill Owens was assigned responsibility for its investigation. Owens undertook his examination of DFI approximately two months later. Physical examination of DFI records was conducted at the home of Joe and Patsy Ladd, and was addressed to the taxable year ending 1976. Mr. Owens' investigation uncovered apparent discrepancies in cash sales, and by his last meeting with the Ladds on March 24, 1978, Owens had expanded his examination to include the taxable year ending July 1975. His suspicion of possible fraud led Owens to refer the case to CID on March 29, 1978, where it was assigned to Special Agent Richard Kaiser. On April 25, 1978, Kaiser

caused to be issued the first of the summonses contested here. He issued a second summons on May 25, 1978, adding documents relating to an earlier year. The April and May 1978 summonses were the first issued to any parties involved in this case. Compliance with requested documents theretofore had been voluntary and complete.

Upon Mrs. Ladd's refusal to comply with the summonses, the IRS initiated an enforcement action in this court, pursuant to 26 U.S.C. § 7604(b). Mrs. Ladd answered, and DFI entered the action as intervenor.[1] In response to the IRS petition filed in this proceeding, Mrs. Ladd and DFI filed their motions to dismiss and to quash the order to show cause. Various grounds are set forth in the motions, each of which is considered separately below as it relates to the enforceability of the summonses. I preface my findings and conclusions relating to these grounds, however, with general observations to focus upon the distinctive nature of a summons proceeding.

I. *Nature of Summons Enforcement Proceedings*

Section 7602 of the Internal Revenue Code of 1954 (IRC) serves as statutory authorization for the IRS' examination of books and records

"for the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability . . ."

26 U.S.C. § 7602.

Enforcement of the summons may be effected only upon application to the appropriate federal district court, which must examine the summons and consider the merits of the application for enforcement. 26 U.S.C. § 7604. *See generally, Constraints on the Administrative Summons Power of the Internal Revenue Service*, 63 *Iowa L.Rev.* 526 (1977). The action in the district court is an adversary proceeding, *Reisman v. Caplin*, 375 U.S. 440, 446, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), to which the Federal Rules of Civil Procedure apply, subject to appropriate limitation by the district court. *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1970). Nevertheless, taxpayers contesting such summonses[2] are neither provided the level of due process protection accorded criminal defendants, nor are they permitted the usual scope of pretrial discovery.[3] *See,*

---

1. DFI's intervention was permitted pursuant to Rule 24(a)(2), F.R.Civ.P., and to 26 U.S.C. § 7609, which provides that any person whose records are sought by way of a third-party summons shall have the right to intervene in any proceeding with respect to the enforcement of such summons under Section 7604.

2. Taxpayers may oppose Section 7602 summonses by any of several ways: ignore the summons; appear pursuant to the summons and assert objections; or raise or renew objections in the district court when the Service seeks enforcement of the summons under sections 7402(b) and 7604. *See Reisman v. Caplin*, 375 U.S. 440, 445–50, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964).

3. The latitude for discovery in summons enforcement proceedings is more restrictive than that accorded in other civil areas. *United States v. Garrett*, 571 F.2d 1323, 1326–27 (5th Cir. 1978).

Both Mrs. Ladd and DFI requested pretrial discovery, although their requests were asserted at differing times. The courts in this circuit will permit limited discovery to take place prior to a hearing on summons enforcement when the movant has adequately challenged the purpose of the summons and sufficiently alleged circumstances under which the purpose would bear on the legality of the summons. *Id.* In her motion to dismiss, Mrs. Ladd placed in issue the purpose of the IRS as issuing the summonses solely for criminal purpose. This contention is discussed in the text at III(e) *infra*. She failed, however, to include circumstances upon which her claim of improper purpose was based. Therefore, she was not entitled to prehearing discovery.

Immediately prior to the hearing, DFI filed its motion to dismiss, containing grounds identical to those raised by Mrs. Ladd, including a claim that the summonses were issued only to obtain evidence to be used in a criminal prosecution.

*e. g., United States v. Turner,* 480 F.2d 272, 275–276 (7th Cir. 1973). The policies reflected in these limitations are dual: (1) that a civil summons is regarded as essentially non-punitive and therefore inquisitorial rather than accusatorial, *United States v. Bisceglia,* 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975); [4] and (2) that the proceeding in the district court may not be used by the taxpayer to delay or avoid payment of a deficiency. The latter consideration is itself part and parcel of a general public goal of prompt collection of tax revenue.[5] *See* 26 U.S.C. § 7609(h)(2).

■ With these considerations in mind, one may better view the posture of the IRS in seeking enforcement of its summonses. The IRS is not required to show probable cause, *United States v. Powell,* 379 U.S. 48, 52–57, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); rather, it has the initial and lesser burden of proving that the requested documents "may be relevant or material to" a civil investigation. 26 U.S.C. § 7602(1); 379 U.S. at 57–58, 85 S.Ct. 248. Upon a government's establishing relevancy, the burden then shifts to the taxpayer to prove that the summons was issued in bad faith or for an improper purpose, or that the information is privileged.

In order to forestall abuse of its process, the district court ordinarily grants a hearing prior to enforcement of the summons.

At that time the taxpayer may issue any appropriate challenge. 26 U.S.C. § 7604.[6] Such a hearing was held before me on January 23, and was continued and concluded on January 29, 1979.

## II. Showing by the Government: Relevancy, Materiality of Documents

The power of the IRS to investigate records and affairs of taxpayers is greater than that of a party in civil litigation; accordingly this circuit has urged that it be liberally construed. *United States v. McKay,* 372 F.2d 174, 176 (5th Cir. 1967). In such a context, moreover, "the criteria of relevancy and materiality has broader connotations than in the context of trial evidence." *Id.*

Revenue Agent Owens testified extensively regarding his conduct of the civil investigation of this case. As a revenue agent, his duty is to analyze the filed return for support documentation and to review the return to determine tax liability. The procedure he employed in this case did not differ from his general practice, in that Owens reviewed only samples of types of documents. His routine method, therefore, does not favor reconciliation of every check deposit or business document because of the cost and effort. Up until the dates of the summonses' issuance, he had primarily sampled purchase and sale slips. He had exam-

After the evidentiary hearing of January 23, both Mrs. Ladd and DFI moved to continue the case to permit discovery prior to completion of the evidentiary hearing, and asserted as grounds testimony elicited at the first hearing.

This circuit has recognized as a general solution to the taxpayer's need for discovery in summons enforcement cases that the district court may proceed directly to a hearing, at which, if desired, the summonee could examine the agent who issued the summons concerning his purpose. *United States v. Wright Motor Co.,* 536 F.2d 1090 (5th Cir. 1976). In such a case the Court could then through its observation and if necessary, its own questioning of the agent, make a determination of whether further exploration, as by discovery, would be proper. *Id.* at 1095.

In light of the circumstances, I ordered that the remainder of the hearing proceed as soon as was practicable, with my further consideration of any additional need for discovery being

given at the conclusion of the hearing. Additionally, I found the hearing at that point had provided the taxpayers ample opportunity to develop facts. Thus, the motions were denied.

4. See also *United States v.* McKay, 372 F.2d 174 (5th Cir. 1967), in which the unquestioned power of the IRS was likened to that exercised by a grand jury, with the accompanying comment that it should be liberally construed. *Id.* at 176.

5. Section 7602 has received a broad interpretation by courts, in recognition of the essential function of tax collection. *See United States v. McKay,* 372 F.2d 174, 176 (5th Cir. 1967).

6. Cases representative of recognized grounds for objection to enforcement of section 7602 summonses are gathered in *Comment, The Improper Purpose Challenge to the Section 7602 Summons,* 31 Tax.Law. 226, 226 n. 1 (1977).

ined some items of expense of cost of goods sold, but had rot completed what he considered to be a thorough or diligent examination of those expenses "below" the cost of goods sold stage. Owens testified he lacked sufficient information to conclude whether further adjustments would result in the unexamined areas.

Owens addressed each item that had been requested in the summonses. He indicated how each would bear on the investigation as it stood at the date of the summonses' issuance, and concluded that each was necessary to ascertain civil tax liability. Owens further stated that no control regarding the civil audit had been exercised by other departments of the government. His communications with other IRS personnel about the case do not support any finding of impropriety. Owens had discussed the case with his supervisor, as was normally required in cases over six months old. Owens queried Regional Counsel regarding a matter collateral to this inquiry in the case.

■ The government has the burden to obtain enforcement of its summonses by showing that they were administratively regular and that the information sought was relevant, material, and not in the hands of the Commissioner. *Powell, supra; United States v. Hankins,* 565 F.2d 1344, 1351 (5th Cir. 1978). I find, subject to exceptions noted in the following sections, that the government has made the requisite showing.

### III. *Burden of Taxpayers: Claims Asserted to Defeat Enforcement*

A. *Failure of the petition to state a claim.* Although Section 7604(a) does not specify the procedure to be followed to invoke jurisdiction, the Supreme Court has concluded that proceedings are instituted by filing a complaint, followed by answer and hearing. *Powell,* supra, *379 U.S. 58* at n. 18, 85 S.Ct. 248, n. 18.

The petition is challenged as failing to allege the enforcement requisites of *Powell.* Contended to be missing are claims (1) that the documents sought are not already in the possession of the government; (2) that the summonses were issued for a legitimate purpose under section 7602 of the Internal Revenue Code and (3) that the government took all procedural steps required by the IRC to effect enforcement. The petition does not track this language. The legal issue offered, therefore, is whether the *Powell* conditions must be present as allegations in the petition or face dismissal of the claim for enforcement.

Taxpayers cite *United States v. Powell, supra,* and *United States v. McCarthy,* 514 F.2d 368 (3d Cir. 1975), as approving their position. Neither case squarely supports this argument. The Supreme Court's opinion in *Powell* does state that the conditions noted above must be met before judicial enforcement will obtain. It does not, however, demand their presence in the petition as a condition to enforcement. Instead, the Court explained that the IRS

"must *show* that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed . . ."

*Powell, supra* at 57–58, 85 S.Ct. at 255. (emphasis added)

The Third Circuit's opinion in *McCarthy* offers on its face more appealing support for taxpayers. That opinion sets forth the Third Circuit's understanding of "generally acceptable" procedure in summons enforcement cases. It envisions, in part, that

"1. The Secretary or his delegate would file a complaint accompanied by an affidavit of the agent who issued the summons, seeking enforcement. The complaint would separately allege compliance with each of the requirements of the *Powell* test of enforceability. The affidavit should support these allegations.

3. At the hearing on the order, the Secretary should be prepared to prove the allegations of the com-

**1156**

plaint—that the summons complies with the *Powell* requirements." 514 F.2d at 372–73.

The complaint at issue in *McCarthy* was technically deficient[7] under the procedure suggested by that appellate court[8] because it failed to state the second and third steps of the *Powell* requirements. The circuit court nevertheless expressly declined to find that the petition before it would require reversal of the lower court's enforcement of the summons.[9] Likewise, the court did not address whether its approval of pleadings would be given only to those that recited the language of *Powell*, or whether it could find compliance through essentially similar averments, albeit couched in other language.

 This circuit has not squarely faced the issue of sufficiency of pleading of an IRS administrative summons. In the absence of a rigid requirement that the language of *Powell* be included verbatim in any pleading for summons enforcement, I do not believe that the petition filed in this proceeding was so deficient as to require dismissal. Instead, I find that the complaint sufficiently describes the basis upon which the claim is brought to permit the IRS to proceed to an evidentiary hearing, at which time it must satisfy the court that the *Powell* conditions are fulfilled.

The petition claims the proper statutory authority for enforcement: 26 U.S.C. §§ 7402(a), 7604(a). It alleges that the United States is conducting an investigation for the purpose of ascertaining the correct income tax liability of DFI for the years August 1, 1973 through July 31, 1976. As noted earlier, section 7602 permits examination of books and records for the purpose, inter alia, of "ascertaining the correctness of any return." By this allegation, the IRS satisfies the first *Powell* requirement.

The petition further alleges, "[T]he respondent is in possession and control of testimony and documents concerning the above described investigation." The fair import of this sentence invokes the second and third additional *Powell* requisites. A practical reading of this claim demonstrates that the inquiry, i. e., these documents, may be relevant to the government's purpose noted above. That the documents "concern" the investigation implies a relationship sufficient to satisfy the "may be relevant" language of *Powell*. I will not elevate any technical semantic distinction between the terms to force dismissal of the petition. Rather, I read the language as reasonably conveying to the summonee fair notice of this purpose. The sentence also satisfies the requirement that the information sought not be in the government's possession.[10] By negative implication, the claim of possession by Mrs. Ladd fulfills this condition.

Finally, *Powell* requires that the administrative steps of the IRC be followed. The copies of the summonses at issue, attached as exhibits to the petition in this case, satisfy this element of *Powell*. In addition, the petition itself, in paragraphs IV through IX, sets forth the sequence of events pre-

---

7. The court noted that a "strict reading" of the complaint would preclude finding that the IRS had made out a prima facie case for enforcement, otherwise required by the new *McCarthy* procedure.

8. The opinion added, however, that the suggested procedure was "merely advisory" in cases other than that at bar.

9. By reversing and remanding the case for proceedings consistent with its order, the *McCarthy* court implicitly accepted even an incomplete complaint as sufficient to proceed to an evidentiary hearing. The IRS distinguishes the *McCarthy* facts from these because the former was on appeal lacking any evidentiary hearing from the lower court. Consequently, a failure

to plead full *Powell* requisites left the IRS with no opportunity to make the showing demanded by *Powell*.

10. This argument appears additionally premised to augment taxpayers' contention that the summonses were issued in bad faith. Taxpayers point to the scope of requests contained as evidence that the summonses were issued as a fishing expedition solely for evidence to be used in a criminal prosecution. The issue of improper purpose is considered *infra* at Section III(E); the issue of government possession of taxpayer documents is discussed at III(C), *infra*.

ceding the filing for judicial enforcement. I find that these are sufficient to demonstrate compliance with administrative steps under the IRC.

Thus, even if the law of this circuit demanded that *Powell* showings be matched by *Powell* allegations before obtaining judicial approval of enforcement, I find that the IRS has fulfilled its pleading requirement.

B. *Specificity of the Summonses.* The taxpayers request dismissal of the enforcement action on additional grounds that the summonses were so vague and indefinite as to make it impossible for taxpayers to identify the requested items, and so overbroad as to violate the taxpayers' Fourth Amendment rights.

The summons of April 25, 1978 directed Patsy A. Ladd to bring

> "any and all records in your possession pertaining to the financial affairs of Dobson Floors, Inc., including but not limited to: General Ledger, Sales Journal, Purchases Journal, Accounts Receivable and Accounts Payable Journal, Cash Receipts and Cash Disbursements Journal, Sales Invoices, Purchase Order, Purchase Invoices, correspondence and any other notes or memorandums pertaining to Dobson Floors, Inc. for the periods August 1, 1974 through July 31, 1976, inclusive."

The May 25 summons requests all the types of documents sought in the earlier summons, plus mechanic's weekly statements and records of salesmen's commissions per check issued. Notwithstanding its similar scope, this summons, however, covers the period of August 1, 1973 through July 31, 1974, indicating investigation into an earlier year than that of the previous summons.

■ The summons power of the IRS is statutorily limited by the requirement that the production of books, papers, records or other data be described with reasonable cer-

tainty. 26 U.S.C. § 7603. This provision recognizes the Fourth Amendment prohibition against unreasonable searches or seizures, applicable if the examination is found to be unreasonable or if it is overbroad, unclear, or unrelated to the subject matter of the inquiry. *United States v. Malnik*, 489 F.2d 682 (5th Cir. 1974); *United States v. Dauphin Deposit Trust Co.*, 385 F.2d 129, 130 (3d Cir.), *cert. denied*, 390 U.S. 921, 88 S.Ct. 854, 19 L.Ed.2d 981 (1968). Consequently, where the taxpayer raises this defense and the court finds his constitutional rights violated, the agency has no right to judicial enforcement. *See Oklahoma Press Publishing Co.*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1945).

Taxpayers concede that most of the documents sought are not violative of the constitutional and statutory standard. Revenue Agent Owens addressed each specific category listed in the summons; he described their anticipated use in audit requirements remaining in the case. It is clear that the summonses pose no problem of identification regarding these items.[11]

As to the requests as they include "any and all records in your possession pertaining to the financial affairs of Dobson Floors, Inc.," and to "correspondence and any other notes or memorandums pertaining to Dobson Floors, Inc.," taxpayers object on Fourth Amendment grounds.

■ The language of the latter phrase does not provide sufficient particularity to enable the taxpayers to identify records sought. In addition, the language suffers from the further defect that fewer than all records arguably within this language are relevant to the IRS' purpose. As noted earlier in this opinion, the inquiry must be one the agency is authorized to make. The applicable authority requires that records sought be relevant. In the event the materiality requirement is met, therefore, the

11. In his testimony, Revenue Agent Owens specifically addressed general ledgers, sales journals, purchases journals, accounts receivable and accounts payable journals, cash receipts and cash disbursements journals, sales invoices, purchase orders, purchase invoices, bank statements, cancelled checks, deposit slips, and W–2 and 1099 forms; he indicated, by year, whether the item was in his possession and whether it was required to complete the audit investigation.

Fourth Amendment affords protection to the extent the request is not indefinite or overbroad.

In *United States v. Luther*, 481 F.2d 429 (9th Cir. 1973), the court required modification of a summons requesting corporate records such as minute books, correspondence files, and other records. The appellate court of that circuit limited enforcement to the extent that only items reflecting the "receipt or disbursement of money" or relating to "financial or property transactions of the Corporation" or its president could be examined. 481 F.2d at 433.

The nature of the tax system is so pervasive that it is arguable that almost all financial transactions have tax consequences. Nevertheless the investigative powers of the IRS are not unlimited, nor is the relevancy requirement of section 7602 infinitely elastic.

■ I find the request for records of DFI's financial affairs is within the requirement of specificity. As to the demand for other items pertaining to the corporation, the language appears overbroad. Summons suffering from this deficiency are not necessarily rendered subject to dismissal. Modification achieving appropriate description removes the reason for unenforceability. *Malnik, supra*, 489 F.2d at 686 n. 4; *Dunn v. Ross*, 356 F.2d 664 (5th Cir. 1966). Accordingly, the government may amend its petition within ten days to more clearly denote the character of the other memoranda it seeks. In the absence of such modification, however, I find the phrase overbroad and unclear and deny enforcement as to it.

C. *Government possession of taxpayer documents.*

■ Further objection is raised by the taxpayers because documents requested are allegedly already in the government's possession. The government has conceded that it currently possesses the general ledgers for 1973 through 1977, the sales journals for 1974 through 1976, the cash disbursement journals for 1975, the cash receipts journal for 1975, and the purchase register for 1974.

As to these, of course, the summonses are not enforceable. *Powell, supra*, 379 U.S. at 57–58, 85 S.Ct. 248; *United States v. Greenleaf*, 546 F.2d 123, 125 n. 4 (5th Cir. 1977).

The summonses requested copies of relevant forms W–2 and 1099. The taxpayer had filed the originals of these forms with the government, retaining its own copies. They now complain that the government may not compel production of forms that are admittedly in their possession. Taxpayers rely on *United States v. Theodore*, 479 F.2d 749 (4th Cir. 1973), for the proposition that the IRS must show that the material requested is not within its possession or that there is no practical way of obtaining the desired items. 479 F.2d at 755. The opinion declined to adopt a restrictive definition of "possession," demanding instead that the Commissioner requesting tax returns must demonstrate that the items, though technically within his possession, are not readily obtainable. Absent such a showing the Court would not assume that the Commissioner would be greatly burdened to obtain the items. Other courts have more readily permitted production of documents that were technically in the government's possession.

■ A summons may be found enforceable even though copies of records sought might be in another governmental agency's file. *United States v. Buck*, 356 F.Supp. 370 (S.D.Tex.1973), affd. 479 F.2d 1327 (5th Cir.), cert. denied 414 U.S. 1097, 94 S.Ct. 732, 38 L.Ed.2d 555. Summons have received enforcement where copies of such records were also in the possession of the Revenue Agent who was doing an independent audit of the taxpayer. *See United States v. Duke*, 74–1 U.S.T.C. para. 9475 (D.C.Ill.1974). Special Agent Kaiser testified that these forms were included as documents sought by the summonses because they were easier to get through the taxpayer than trying to retrieve them from the appropriate IRS facility in which they are filed. Moreover, Kaiser opined that he didn't think he would be able to retrieve the 1099's at all.

I find the government's showing insufficient to include production of these forms, and remark that the rationale of the agent's remarks that one government facility is unable to effect transfer of records from another, is a depressing commentary on today's bureaucracy.

■ As to the remainder of the items requested, Owens testified that he had seen portions of the documents previously. It is admitted that Mr. and Mrs. Ladd furnished all records requested by this revenue agent during his audit in 1977 and 1978. The agent was not limited to this period, however, to inspect all the records ultimately required for a complete audit. Nor does access to them during that time defeat his later request and inspection. *United States v. Key Oil Co.*, 460 F.Supp. 878 (D.N.J.1978).

Section 7605(b) limits examination of a taxpayer's books to one inspection unless there is a statutory notice to the taxpayer of need for an additional inspection. This section does not apply, however, unless the first inspection was a "meaningful" one. *United States v. Garrett, supra,* at 1329, and cases cited at 1329 n. 5. Owens' testimony indicates that a meaningful examination had not occurred for the records sought, nor were the investigations closed for the years involved. Thus, the summons is not barred from enforceability on this ground.

■ D. *Statute of Limitations.* Taxpayers claim that the applicable statute of limitations bars assessment and collection for DFI's taxable year ended July 31, 1974 and for Mrs. Ladd's taxable year 1974. In support of this contention, taxpayers cite 26 U.S.C. § 6501(a), (b), providing in part,

(a) General rule.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed . . . ,"

or by the last date prescribed by law or by regulations promulgated pursuant to law for filing of returns, whichever date is later. 26 U.S.C. § 6501(b). Under this rule, the statute of limitations for the taxable year ending July 31, 1974 expired on October 15, 1977; and for the taxable year ending July 31, 1975, the statute expired on October 15, 1978. The IRS has issued no notice of deficiency relating to either of these years.[12]

Taxpayers have constructed an argument to defeat enforcement by theorizing that the clear running of the statute as to taxable year 1974 demonstrates the IRS' purpose to seek information relating to that year solely for use in connection with a criminal prosecution. The defense of improper purpose, is discussed and rejected *infra* at Section III E. The statute of limitations issue is considered separately here, however, to examine its relevance in IRS investigations.

Civil tax determinations may be conducted past the three year period. The general rule is expressly inapplicable to cases of false returns or willful attempts to evade taxes.[13] In addition, Section 6501 provides a six-year statute, which applies to specified circumstances of substantial omission of items from tax. 26 U.S.C. § 6501(e). Courts have respected the IRS authority to use its summons when the usual three-year limitation statute has run regarding the years involved. *United States v. Giordano,* 419 F.2d 564 (Cir. 1969), *cert. denied,* 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648. The six year period applies, for example, where the taxpayer has understated his gross income in an amount more that 25%

---

12. Likewise, the IRS has not issued a notice as to the other year under investigation, ending July 31, 1976; however, the general statute of limitations applicable to this period had not run at the time the summonses issued.

13. "*False return.*—In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.

"*Willful attempt to evade tax.*—In case of a willful attempt in any manner to defeat or evade tax imposed by this title . . . , the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time."
26 U.S.C. § 6501(c)(1), (c)(2).

of gross income in the year in issue. 26 U.S.C. § 6501(e)(1)(A).

In addition, a finding of fraud with respect to any part of the 1974 or 1975 returns would toll the statute of limitation and permit the assessment of any deficiency at any time. 26 U.S.C. § 6501(c)(1).

Consequently, I will not find that the running of the general limitations statute precludes enforcement of the summons as to the taxable years ending July 31, 1974 and July 31, 1975.

E. *Issuance for an Improper Purpose.* Taxpayers finally object to enforcement on the grounds that neither summons was issued in good faith and pursuant to a legitimate purpose as required by Section 7602. They contend that the summonses were issued instead to enable the IRS to obtain additional evidence for a criminal prosecution. In *Donaldson v. United States, supra,* the Supreme Court developed a two-pronged disjunctive test to identify criminal purpose summonses: (1) whether, at the time the summons was issued, there was a pending criminal charge, or (2) if not, whether the investigation pursuant to which the summons was issued was being conducted solely for criminal purposes.[14]

 The legitimacy of an IRS summons is tested as of the date of its issuance. *Garrett, supra,* 571 F.2d at 1327. The first summons was issued on April 25, 1978. A month later, on May 25, 1978, the second summons issued. At these times the IRS had made no recommendation to the Department of Justice that criminal prosecution be made. Accordingly, the taxpayers may not assert the first prong of *Donaldson* to bar enforcement. The issue, therefore, is whether at the times of the summonses' issuance, the IRS in an institutional sense had abandoned its pursuit of civil tax liability. *United States v. LaSalle National*

*Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). Unless the determination of civil tax liability is at least one of the purposes for issuing these administrative summonses, there is no statutory basis for their issuance. *United States v. Wright Motor Co.,* 536 F.2d 1090, 1095 (5th Cir. 1976); *United States v. Salter,* 432 F.2d 697 (1st Cir. 1970). The heavy burden of demonstrating that no civil purpose existed is on the taxpayer. *LaSalle, supra,* 98 S.Ct. at 2357; *Garrett, supra,* at 1329. *See e. g. United States v. Seruba,* 460 F.Supp. 689 (E.D.Pa.1978).

 At the hearing, Owens described his role in the tax examination of DFI. He noted that his investigation had not exhausted what he termed a "diligent" pursuit of the case. His further testimony revealed that the requested records and memoranda were necessary for his completion of computations of civil tax liability of DFI. His testimony demonstrates that there was an ongoing civil investigation at the relevant times and that the summonses were issued to facilitate that investigation. *United States v. Humble Oil & Refining Co.,* 518 F.2d 747 (5th Cir. 1975).

Taxpayers have sought to refute this testimony. They argue that Mr. Owens, on the dates of the summonses' issuance, no longer was actively investigating civil tax liability because he had previously completed steps of his audit relating to examination of records and was prepared to compile the results of his previous work. In support of this theory, Mrs. Ladd's attorney testified regarding his understanding of the substance of a meeting held in his office on June 13, 1978. Those present with him were Revenue Agent Owens, Special Agent Kaiser, and Joe and Patsy Ladd. The attorney remembered Owens as indicating that the bulk of his work had been completed and that his preparation of the revenue

---

**14.** Where the "sole objective" of the investigation is to obtain evidence for use in a criminal prosecution, the purpose is not a legitimate one and enforcement may be denied. 400 U.S. at 533, 91 S.Ct. 534.

*Donaldson* provided no guidelines as to what facts would demonstrate good faith purpose;

the Supreme Court later elaborated on this issue to hold that the inquiry should embrace not only the issuance of the summons but the underlying investigation as well, *Powell, supra,* 379 U.S. at 58, 85 S.Ct. 248.

agent's report merely awaited completion of the "criminal features." Both Owens and Kaiser testified to the contrary, however, for neither remembered any such representation; moreover, Owens testified that had such a broad statement been made, it would have been erroneous. He explained that his audit prior to the issuances had focused on income claimed and realized by DFI during the years examined but had not fully developed other areas. At the time of the summonses' issuance, however, Owens was aware of other individual adjustments remaining to be made in the case.

I find Owens' description of his procedure of examination to be persuasive. In April and May he was in the position of having concentrated his efforts on the initial considerations of adequacy of income reporting by DFI. The first focus on this area comports with the nature of the informant's tip regarding unreported sales invoices. Notwithstanding his examination into this area, Owens' audit required further scrutiny of records to consider expenses of this taxpayer, as well as income.

On balance, I find that the testimony regarding comments allegedly made on June 13 is insufficient to demonstrate that Owens on either May 25 or April 25, 1978, had abandoned his pursuit of DFI's civil tax liability. Even had a contrary finding been made, however, enforcement would not necessarily be precluded. *LaSalle* clarified the dispute among the lower courts, to hold that the purpose of the IRS as an institution, not of the individual investigating agent, controls whether the summons was issued in good faith and for a proper purpose. Moreover, the controlling date is not the date the agent recommends prosecution to the IRS, but the date the IRS recommends prosecution to the Department of Justice. *LaSalle, supra,* 437 U.S. at 313, 98 S.Ct. 2365 n. 15, 57 L.Ed. at 233 n. 15.

■ The fact that the audit originated with a referral from the CID does not of itself divest Audit's subsequent examination of its civil nature. The IRS receives tips from various sources, which triggers its legitimate investigation into possible civil tax recovery.

■ Likewise, the fact that Mr. Owens had referred the case to CID prior to the issuance of the summonses, does not render any further examination by him to be moot; neither does it constitute an abandonment, either by him or by the IRS in an institutional sense, of civil purpose.[15] The IRS is authorized to conduct both civil audit and criminal investigations. See IRS News Release No. 897, October 3, 1967; Proposed Treas.Reg. 1118.61, 32 Fed.Reg. 760 (1967). The civil audit is conducted by a revenue agent from the Audit Division, while the criminal investigation is managed by a special agent of CID. Moreover, the scope of the special agent's investigation extends to both civil and penal provisions of the IRC. 26 U.S.C. § 6653(b); 26 U.S.C. §§ 7201–07.

The Intelligence Division enforces tax laws in part through enforcement of

> "the statutory sanctions applicable to income, estate, gift, employment, and certain excise taxes through the investigation of possible criminal violations of such laws and the recommendation (when warranted) of prosecution and/or assertion of the 50 percent ad valorem addition to the tax . . ."

26 C.F.R. § 601.107(a) (1978). Thus, special agents possess an interest in civil aspects of a case, not solely as they relate to the

---

15. The recommendation for criminal prosecution occurs at three levels in the IRS. The first occurs after the Special Agent has conducted a formal hearing with the taxpayer and compiled his report. He then forwards his report to the IRS Regional Counsel if he recommends criminal prosecution. *Donaldson, supra,* 400 U.S. at 534–35, 91 S.Ct. 534. A second stage occurs when the Regional Counsel receives the Special Agent's report and recommendation at which time the taxpayer is notified of the decision of the Special Agent and requested to arrange a meeting with the Regional Counsel. The case in its entirety is reviewed; if the Regional Counsel concurs in the recommendation to prosecute, the case is sent to the Washington office of IRS. The third stage is the recommendation, after review of the case, of the Washington Office to the Department of Justice. See generally, *Hunke, The Lawyers Role in a Criminal Tax Evasion or Fraud Case Prior to Indictment,* 46 *N.Dak.L.Rev.* 9 (1969).

criminal investigation, but also as they relate to assessment of the civil fraud penalty. Both Audit and CID may simultaneously investigate a taxpayer and thereafter seek and compel production of relevant documents. *LaSalle, supra; United States v. Schutterle*, 586 F.2d 1201 (8th Cir. 1978); *United States v. Oaks*, 508 F.2d 1403 (9th Cir. 1974), later app. 527 F.2d 937 (9th Cir.).

In *Donaldson*, the Court found that criminal and civil elements of a tax investigation may coexist and that the IRS may possess a dual purpose when issuing a summons, if it is in good faith and prior to a recommendation for criminal prosecution. 400 U.S. at 536, 91 S.Ct. 534. In permitting summons enforcement, the *Donaldson* court squarely rejected the taxpayer's argument that the mere possibility of ultimate criminal action and the presence of a special agent from the Intelligence Division constituted "solely criminal investigation."

■ The evidence before me is that the IRS investigated the taxpayers' potential civil tax liability as well as their criminal liability. *See United States v. Schutterle, supra* at 1204. This is true notwithstanding an eventuality that the summonses might actually produce criminal evidence. *United States v. Turner*, 480 F.2d 272 (7th Cir. 1973).

"There is no statutory suggestion for any meaningful line of distinction, for civil as compared with criminal purposes, at the point of a special agent's appearance (citations omitted). To draw a line where a special agent appears would require the Service, in a situation of suspected but undetermined fraud, to forego either the use of the summons or the potentiality of an ultimate recommendation for prosecution. We refuse to draw [the] line." 400 U.S. at 535–36, 91 S.Ct. at 544. *Cf. United States v. Hankins*, 565 F.2d 1344, 1350 (5th Cir. 1978).

■ Nor does the fact that a special agent issued the summonses preclude existence of an ongoing examination for civil tax liability. The increasing use of special agents of the Intelligence Division in joint investigations has resulted in a swelling of challenges to IRS summonses as being issued to determine criminal culpability under the IRC. Nevertheless, it is clear that Section 7602, authorizing issuance of IRS summonses by the "Secretary or his delegate," permits both revenue and special agents to issue them. Taxpayers claim that on June 13, 1978 Special Agent Kaiser stated to Mrs. Ladd and to her attorneys that Kaiser believed he had enough evidence to recommend criminal prosecution of the corporation and of the three principal officers for willful attempted evasion of income taxes. The circumstances present in *LaSalle* involved issuance by a special agent. The special agent who had issued the contested summons to LaSalle National Bank claimed that he had made no decision as to whether or not criminal prosecution would be undertaken. Notwithstanding his assertion, the evidence in *LaSalle* disclosed that the investigation being conducted by him was solely criminal in nature and only for the purpose of gathering evidence for a criminal prosecution. *United States v. LaSalle National Bank*, 554 F.2d 302 (7th Cir. 1977). The summons was nonetheless held enforceable by the United States Supreme Court based on its legal conclusion that no evidence suggested IRS abandonment, in an institutional sense, of its civil purpose. In both cases, the finding is compelled that the institutional-IRS had not renounced its civil tax investigation. On the basis of my findings that a civil tax investigation was present at the time of the issuance of these summonses, I conclude that respondents have not demonstrated that the summonses were issued in bad faith.

To the extent outlined in this opinion, I find that the summonses were issued before the IRS recommended criminal prosecution to the Department of Justice and that it issued the summonses in "good-faith pursuit of the congressionally authorized purposes of § 7602." *LaSalle*, 437 U.S. at 317, 98 S.Ct. at 2368. Therefore, I order that the summonses be enforced as indicated above.

It is so ORDERED.