UNITED STATES of America, Appellee,

v.

**Lester GENSER and Lawrence Forman, Appellants.**

**Nos. 76–2623, 76–2624.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Dec. 22, 1978.

Decided March 9, 1979.

Robert J. Del Tufo, U. S. Atty., Maryanne T. Desmond, Asst. U. S. Atty., Newark, N. J., for appellee.

Irving R. Segal, James D. Fornari, Susan K. Herschel, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellants; Zuckerman & Aronson, Newark, N. J., of counsel.

Before SEITZ, Chief Judge, and BIGGS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

In this aspect of these appeals we must examine the substantive and procedural implications of the Supreme Court's decision in *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), which described the limits of the Internal Revenue Service's authority to issue civil summonses under 26 U.S.C. § 7602. Defendants Lester Genser and Lawrence Forman appealed from their convictions for tax evasion. In an earlier opinion we rejected various challenges to those convictions but retained jurisdiction and remanded the case to the district court for an evidentiary hearing on the defendants' contention that summonses issued during the

investigation exceeded the IRS's authority. *United States v. Genser*, 582 F.2d 292 (3d Cir. 1978).

On remand, the district court conducted an evidentiary hearing and concluded that none of the summonses employed during the investigation were issued "solely for a criminal purpose," as defined in *LaSalle*. In challenging that ruling, defendants argue that the district court erred in two respects: first, in denying them adequate discovery, and second, in misconstruing the substantive requirements of *LaSalle* itself.

I

The IRS conducted an initial audit of defendants' books and records in 1971 but discovered no deficiencies. In 1974 the IRS reopened the investigation that eventually led to defendants' convictions. Our earlier opinion adequately set forth the factual predicate of those convictions. *See* 582 F.2d at 295–96. Before the recent evidentiary hearing, however, the details of the investigation itself were veiled. The testimony and documents presented at that hearing provide the necessary vehicle to explore the reaches of *LaSalle*.

According to uncontested testimony, Frank Parisi, a special agent of the IRS, began in August 1974 to investigate defendants' corporate dealings during the taxable years 1969 to 1974. Almost immediately upon assignment to the case, he began to summon records and witnesses under 26 U.S.C. § 7602. That provision empowers agents of the IRS to issue summonses

[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability . . . . .

On November 12, 1974, after issuing nineteen summonses, Parisi requested permission to reopen a formal investigation in light of new evidence from a confidential source. In the memorandum accompanying his request Parisi asserted that "[t]he investigation to date has disclosed a conspiracy between Genser Forman, Inc. owners and employees and various vendors, to generate currency by the use of ficticious invoices." Parisi's request to reopen was approved sequentially by his group supervisor, the chief of the audit branch of his field office, his district director, and, on November 22, 1974, the chief of the IRS's Intelligence Division, now called the Criminal Investigation Division. *See* 43 Fed.Reg. 53030 (Nov. 15, 1978).

By December 6, 1974, Parisi had begun to encounter what he believed to be recalcitrance on the part of some of the summonsed witnesses. On that date he filed a "Request for Reluctant Witness Grand Jury Authorization" pursuant to a now-revoked provision in the IRS Manual. Under that provision an IRS agent could request the assistance of a permanent grand jury in securing the testimony of reluctant witnesses. Parisi had discussed resort to this procedure with David Gaston, the IRS's Regional Counsel. As required by the Manual, the chief of the Intelligence Division approved the authorization on December 9, 1974, and forwarded the request to the United States Attorney, who approved on December 18, 1974. Although Parisi had requested grand jury subpoenas for only three persons, a total of six witnesses eventually were served. Only one witness ever had to appear before the grand jury. During this process Parisi was in almost daily contact with the United States Attorney.

Parisi substantially completed his investigation in March 1975. By that time he had issued a total of 106 summonses under section 7602. During the next six months, while writing his final report, he issued nine more summonses.

On October 31, 1975, approximately one month after Parisi filed his final report recommending prosecution, another agent assigned to the case issued the 116th and final summons. Although the record is un-

clear, Parisi's recommendation must have been reviewed by the district chief of the Intelligence Division sometime between September and November 1975, because it reached the Office of Regional Counsel in November or December of that year. *See* 26 C.F.R. § 601.107(b) and (c). The Office of Regional Counsel formally referred the case to the Justice Department for prosecution on December 12, 1975. The IRS issued no summonses after that referral.

In considering this chain of events in light of *LaSalle*, the district court held that all the summonses were valid:

> [T]he Court finds that the defendants have failed to demonstrate by a preponderance of the evidence that the Internal Revenue Service at the time any of the summonses were issued had either already referred the matter to the United States Department of Justice or had itself determined that it was interested solely in the criminal tax aspects of the matter.
>
> I further find by a preponderance of the evidence that the United States has demonstrated that throughout the course of the investigation the Internal Revenue Service was at all times interested [in] and actively pursuing substantial amounts of tax penalties and interest owed by the defendant Genser and the defendant Forman to the Treasury of the United States.

As we requested, the district court certified its findings and the record of the proceeding to this court.

## II

In our earlier opinion in this case we focused on defendants' contentions that they had standing to challenge the summonses and that evidence secured through invalid summonses must be suppressed. We did not attempt to examine *LaSalle*'s substantive implications, leaving that task to the district court in the first instance. We therefore turn to the Supreme Court's opinion in *LaSalle* before considering defendants' substantive and procedural challenges to the disposition below.

### A.

In *LaSalle* the Supreme Court elaborated upon its earlier indications that a summons could not issue under section 7602 solely to advance a criminal investigation. *See Donaldson v. United States*, 400 U.S. 517, 533, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). *See also Reisman v. Caplin*, 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964). Justice Blackmun, writing for the majority, explained that Congress, in authorizing such summonses, had intended to aid the IRS in the civil collection of delinquent taxes. Congress did not intend to usurp the traditional role of the grand jury as the primary investigator of criminal activity. "[S]ummons authority does not exist to aid criminal investigations solely." 437 U.S. at 317 n. 18, 98 S.Ct. at 2367 n. 18.

The conundrum, as both the majority and the dissent recognized, is identifying those summonses that are issued "solely" to aid the criminal aspects of the investigation; criminal liability for tax evasion automatically spawns civil liability for tax delinquencies. In *LaSalle* the investigating agent had stated that his inquiry was "'strictly related to criminal violations of the Internal Revenue Code.'" 437 U.S. at 303, 98 S.Ct. at 2360. Nevertheless, the Supreme Court rejected the taxpayer's contention that the summonses necessarily lacked a civil purpose and should not be enforced. The entire Court agreed that the agent could not commit the IRS to a criminal prosecution and therefore his subjective intent was not dispositive.

The dissenting justices would have applied an objective test. If the summons issued before the IRS officially referred the case to the Department of Justice for prosecution, then it would be deemed to serve a civil purpose. If it issued after referral, it would be invalid.

The majority, while agreeing with the dissenters that all summonses issued after official referral would be invalid, held that in some cases the "institutional posture" of the IRS would preclude the issuance of a civil summons even before referral to *' '* Department of Justice:

We shall not countenance delay in submitting a recommendation to the Justice Department when there is an institutional commitment to make the referral and the Service merely would like to gather additional evidence for the prosecution. 437 U.S. at 316–317, 98 S.Ct. at 2367–68. Justice Blackmun noted that use of a civil summons in such circumstances would expand impermissibly the government's right to criminal discovery. Furthermore, in some cases the IRS might become "an information-gathering agency for other departments, including the Department of Justice . . . ." *Id.* at 317, 98 S.Ct. at 2368.

In summarizing the Court's holding, Justice Blackmun stressed "several requirements . . . for the enforcement of an internal revenue summons." One requirement was that "the Service not abandon in an institutional sense . . . the pursuit of civil tax determination or collection." 437 U.S. at 318, 98 S.Ct. at 2368. According to the majority, however, "those opposing enforcement of a summons . . . bear the burden to disprove the actual existence of a valid civil tax determination or collection purpose by the Service." *Id.* at 316, 98 S.Ct. at 2367.

### B.

In this case the government argues that *LaSalle* permits the IRS, at any time before official referral, to issue summonses as long as that agency continues to pursue civil aspects of the investigation. The district court seemed to be persuaded by this interpretation, which draws some support from a decision of the Second Circuit. *See United States v. Marine Midland Bank of New York*, 585 F.2d 36, 39 (2d Cir. 1978) (per curiam) (the "only" inquiry under *LaSalle* is "whether the IRS 'in an institutional sense had abandoned its pursuit of . . . civil tax liability.'"). In support of its position on this issue, the government cites considerable evidence that the IRS was attempting throughout its investigation to ascertain the exact amount of tax owed by defendants. That attempt finally resulted in a jeopardy assessment against the defendants.

■ We recognize that Justice Blackmun wrote in *LaSalle* of the necessity for the taxpayer to prove that the IRS had "abandoned" a civil purpose. We do not believe, however, that the existence of a general civil purpose for the investigation terminates judicial inquiry. The government has failed to recognize that, under *LaSalle*, we must focus on the purposes of individual summonses and not on the purpose of the investigation as a whole. In this case, for example, the IRS issued 116 summonses under section 7602. If any one of those summonses were issued solely for a criminal purpose, the fruits of that summons would have to be suppressed, even in the face of an overwhelmingly civil purpose of the investigation as a whole. The IRS simply would lack statutory authority to issue that particular summons.

Several factors make the government's reading of *LaSalle* unreasonable. First, if the district court limits its inquiry to the existence *vel non* of a general civil purpose for the investigation, the abuses delineated by the *LaSalle* majority would go undetected and unremedied. For example, Justice Blackmun expressed a fear that the IRS might delay official referral to the Justice Department "merely . . . to gather additional evidence for the prosecution." 437 U.S. at 317, 98 S.Ct. at 2368. Under the government's reading of *LaSalle*, such a delay would be perfectly permissible, regardless of the purpose of the individual summonses, as long as the IRS had not yet determined the full scope of civil liability. Similarly, the government presumably would allow the Justice Department to use the IRS as an "information gathering agency" as long as the IRS had not closed its civil investigation. *LaSalle*, of course, prohibits such subterfuge. *Id.*

Second, by making the existence of a continuing civil purpose for the investigation dispositive, we would impose an impossible burden of proof upon the taxpayer. Not only would he be required to prove a negative, the nonexistence of a general civil purpose for the investigation, but he also would be required to disprove what already

has been postulated, the congruence of criminal and civil liability. *See* 437 U.S. at 315, 98 S.Ct. at 2367. As the district court noted in this case, "it is almost impossible to conceive of a case where there can be a criminal violation . . . without civil tax consequences."

■ By requiring a link between each summons and the proffered civil purpose, we are not requiring a district court to examine every summons issued in every investigation. *LaSalle* itself suggests clear limitations on the necessary inquiry. First, under *LaSalle*, the subjective intent of the agent issuing the summons does not bind the IRS as an institution. Drawing from this axiom, we believe that summonses issued by an investigating agent before that agent recommended prosecution would be virtually unassailable. *Cf. United States v. Schutterle*, 586 F.2d 1201 (8th Cir. 1978) (issuance of summons one year before agent recommended prosecution "precludes any inference" that summons violates *LaSalle*). We say "virtually" only because we can envision circumstances where, for example, an agent issued summonses at the request of the United States Attorney or delayed his recommendation at the request of his superiors solely to further a criminal investigation. Such abuses would go to the heart of the protections afforded taxpayers by *LaSalle.*

More suspect, of course, would be those summonses issued after an agent has recommended prosecution. Even in the case of such a summons, however, the taxpayer would bear the burden of proving both a pre-existing institutional commitment to prosecute and a failure of the summons to advance any civil purpose. The IRS, on the other hand, could deflect such a challenge simply by demonstrating that each summons issued after the agent's recommendation did, in fact, have a civil purpose.

We believe that our interpretation of *LaSalle* has several salutary effects. It encourages agents to complete their investigations before recommending prosecution. It discourages, but does not preclude, the issuance of summonses after such a recom-

mendation, when the potential for abusive institutional delay is greatest. Finally, it recognizes that each and every summons issued under section 7602 must contribute in some way to a civil inquiry.

■ In this case, we note that the district court specifically rejected defendants' contention that Agent Parisi was influenced in his investigation by the Department of Justice. The district court found that "the defendants have failed to establish that Agent Parisi was, in fact, acting under the auspices of the United States Attorney prior to the time [of] the criminal reference letter of December 12, 1975." We believe that this finding is supported by substantial evidence. *Cf. United States v. Chemical Bank*, 593 F.2d 451, (2d Cir., 1979) (IRS agent's participation in Justice Department Strike Force did not violate *LaSalle* ).

The district court failed, however, to confront defendants' claim that the IRS, as an institution, had committed itself before December 12, 1975, to refer the case for prosecution and that summonses issued after that commitment served no civil purpose. Although Agent Parisi asserted that all 116 summonses were issued for a civil purpose, the district court did not make such a finding. Instead, it was content to find that the IRS maintained a continuing civil interest in the outcome of the investigation. As we have demonstrated, such a general civil purpose could not ratify an otherwise illegal summons.

In support of the existence of institutional commitment to prosecute, defendants cite Agent Parisi's suspicion of criminal activity as recorded in his reopening memorandum and his use of the grand jury to compel testimony. Although both these phases of the investigation required the approval of Parisi's superiors, we doubt that these factors, by themselves, could support a finding of institutional commitment to prosecute. We feel compelled, however, to remand this case to the district court for a specific finding on defendants' contention, especially in light of Parisi's testimony that he did not file his final report until five months after the investigation was substan-

tially complete. Inordinate and unexplained delays in the investigatory process are one factor that might lead a court to infer that an agent was acting at the behest of his superiors solely to pursue criminal aspects of the investigation. Summonses issued during such a delay merit a court's special attention. Furthermore, we note that one summons was issued after Parisi had filed his final report.

Under these circumstances, we believe that the district court is in a better position than are we to weigh the evidence and to draw conclusions about possible institutional commitment.

### C.

Having outlined the substantive implications of *LaSalle*, we now must consider defendants' contention that the district court improperly limited their discovery before and during the evidentiary hearing. Prior to the hearing the district court denied defendants' motions to discover the contents of the IRS's investigatory files on the case, except insofar as the government consented. Defendants responded by subpoenaing the appearance of twenty witnesses at the hearing, including the Commissioner of Internal Revenue, the United States Attorney for the District of New Jersey, and various high-ranking officials of the Criminal Tax Section of the Department of Justice. Each subpoena directed the witness to produce all documents relating to the case. The district court refused to enforce any of the subpoenas. Agent Parisi testified at the hearing, but the district court refused to order him to open his files. Instead, the district court granted defendants limited discovery of documents relating to phases of the investigation brought out during Parisi's testimony.

■ Our reading of *LaSalle* suggests several guidelines for discovery. At a minimum, the taxpayer should be entitled to discover the identities of the investigating agents, the date the investigation began, the dates the agent or agents filed reports recommending prosecution, the date the district chief of the Intelligence Division or

Criminal Investigation Division reviewed the recommendation, the date the Office of Regional Counsel referred the matter for prosecution, and the dates of all summonses issued under 26 U.S.C. § 7602. Furthermore, the taxpayer should be entitled to discover the nature of any contacts, relating to and during the investigation, between the investigating agents and officials of the Department of Justice.

■ Where this information or other evidence introduced by the taxpayer reveals (1) that the IRS issued summonses after the investigating agents recommended prosecution, (2) that inordinate and unexplained delays in the investigation transpired, or (3) that the investigating agents were in contact with the Department of Justice, the district court must allow the taxpayer to investigate further. In proper cases, this investigation could include the opportunity to examine the IRS agents or officials involved, or to discover documents. Such examination/discovery, however, should be carefully tailored to meet the purpose of the inquiry. On the other hand, where this information indicates that none of these three conditions are present, the district court need inquire no further.

In this case the district court's rulings conformed very closely to these guidelines. During Parisi's testimony the district court allowed defendants to discover the available documents relating to the reopening of the investigation and the use of the grand jury. Furthermore, defendants learned virtually all the dates listed above, except perhaps the date of review by the district chief of the Intelligence Division. Although defendants had the opportunity to press Parisi on the five-month delay in the filing of his report and on the issuance of a summons after that filing, they did not pursue those matters. In considering these issues on remand, the district court should determine whether to afford defendants additional discovery and whether to conduct further proceedings.

### III

Although we share the government's concern that defendants accused of tax evasion

may employ the outlined procedures to delay or frustrate justice, we feel obligated to provide a procedural mechanism to vindicate *LaSalle*'s substantive guarantees. In the absence of congressional action defining the scope of the IRS's power to issue summonses, courts must continue to search for the vague boundary between civil and criminal investigation.

We will retain jurisdiction over this appeal and will remand to the district court for appropriate proceedings and findings and for prompt certification of the supplemental record to this court.

BIGGS, Circuit Judge, dissenting.

116 section 7602 summonses were issued during the following periods: 1 through 19: August 28 to November 12, 1974; 20 through 99: November 12, 1974 to January 31, 1975; and 100 through 116: January 31 to October 31, 1975. Further, there is evidence in the record establishing the fact that each of these summonses was issued as part of simultaneous civil and criminal investigations.

Agent Parisi testified on re-direct examination by Mr. Mendelson, an Assistant United States Attorney, as follows:

"Q. [By Mr. Mendelson] We indicated earlier this morning [that] *116* [Section 7602] summonses were served during your investigation, is that correct?

A. I believe that's true. [Emphasis added].

Q. Were any of those summons issued solely for the purpose of acquiring criminal evidence?

A. No, sir.

Q. *What was your purpose in issuing each and every one of these summonses generally?*

A. *There was a two-fold purpose; to determine any income tax liability of the taxpayers, and to gather evidence to assist the Internal Revenue Service to de-*

termine *whether or not there has been a criminal violation of the Internal Revenue laws.* [Emphasis added].

Q. When you say 'taxpayers' who do you mean?

A. Corporate taxpayer Genser-Forman, Incorporated, Lester Genser and Lawrence Forman." (Evidentiary Hearing at 176).

It is clear from the foregoing portion of the record of the evidentiary hearing that the 116th section 7602 summons was brought to the attention of the court and counsel at the evidentiary hearing, and it is also clear from that portion of the evidentiary hearing quoted above that Parisi testified that the purpose of the 116th summons was to gain evidence for the civil recovery of unpaid taxes and also to determine whether or not there was criminal liability.

I do not doubt that *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), governs the case at bar. The teaching of the Supreme Court in *LaSalle* is exactly expressed, in my view, by Nuzum, *LaSalle National Bank and the Judicial Defenses to the Enforcement of an Administrative Summons*, 32 The Tax Lawyer 383, 391 (1979), as follows:

"B. *Supreme Court Opinion.* In a 5–4 decision authored by Justice Blackmun, the Supreme Court reversed the Seventh Circuit's opinion and held (1) that a summons must be issued before the Service recommends prosecution to the Department of Justice; [1] (2) that a summons issued prior to such recommendation must be issued in good faith and that a summons issued solely for a criminal investigation is not in good faith; and (3) that the Service is not using its summons authority in good faith if it has abandoned, in an institutional sense, the pursuit of civil tax determination or collection."

1. *The referral letter of the Internal Revenue Service to the Department of Justice was dated December 12, 1975.*

Parisi's final report was forwarded to the Regional Counsel in September 1975 (Eviden-

tiary Hearing at 62), and the evidentiary hearing upon our remand, when Parisi made the statements quoted above, was October 31, 1978.

To the above I add the following by way of further interpretation of *LaSalle.* To enforce a section 7602 summons, the IRS must have issued it in good faith use of the authority of section 7602. The IRS must not abandon its institutional authority to determine and collect taxes and civil fraud penalties. The IRS also must not abandon its institutional authority to determine the existence of violation of criminal laws relating to taxation. The two functions are intertwined. That a single agent has in mind gathering evidence for a criminal investigation does not prove institutional bad faith on the part of the IRS. A taxpayer in order to escape the effect of a section 7602 summons must disprove the existence of a valid civil tax determination or collection purpose by the IRS. This the appellants cannot do, for there was, and apparently still is, a valid civil tax investigation resulting in tax liens against the appellants which were in fact ameliorated to some extent by the agreement to release some of the appellants' assets. See Exhibit G–6 (Evidentiary Hearing at 227).

For the reasons stated, I must respectfully dissent. I deem another evidentiary hearing, which the majority opinion requires, as unnecessary and I would grant the motion of the United States and immediately send down the certified judgment in lieu of the formal mandate.[2]

---

**2.** The majority lays emphasis on what it regards as "inordinate and unexplained delays in the investigation" (Majority Opinion at 152). *The time factor is not relevant in view of the fact that there was investigation by the IRS as to civil as well as criminal liability during the critical period.*

The following dates are relevant:
The last summons, No. 116 (by Gary Neuberger), was issued October 31, 1975 (Evidentiary Hearing at 61).
Agent Parisi started to write his report in March of 1975 (Evidentiary Hearing at 61).
Agent Parisi's final report was sent to the Regional Counsel in September of 1975 (Evidentiary Hearing at 62).

Referral to the Department of Justice for prosecution was December 12, 1975 (Evidentiary Hearing at 143–44).

I believe the majority refers to the lapse of time between the date when Parisi started his report and the date he sent it to the Regional Counsel. This lapse was less than six months.

I believe this delay and any others have little significance, if, in fact, delays they be. Judicial notice may be taken of the fact that the IRS does not move with startling speed. To my mind, the delay or delays not only seem short, but to me Parisi seems to have acted with reasonable promptness.