UNITED STATES of America and Richard E. Zagotta, Special Agent, Internal Revenue Service, Petitioners,

v.

NELSEN STEEL & WIRE COMPANY, INC., an Illinois corporation; D. Nelsen & Sons, Inc., an Illinois corporation; and Ethon Hyman, Rydell & Co., an Illinois partnership, Respondents.

No. 77 C 4505.

United States District Court, N. D. Illinois, E. D.

Feb. 29, 1980.

Michael L. Siegel, Asst. U. S. Atty., Chicago, Ill., for petitioners.

James C. Murray, Jr., Katten, Muchin, Gitles, Zavis, Pearl & Galler, Chicago, Ill., for respondents.

## MEMORANDUM OPINION

WILL, District Judge.

Petitioners in this case seek judicial enforcement of various Internal Revenue Service summonses issued pursuant to 26 U.S.C. §§ 7402(b) and 7604(a). Respondents resist enforcement on the ground that the IRS was acting in bad faith when it issued the summonses. The case is now before us on respondents' motions to compel testimony and to compel production of certain IRS documents. We deny these motions for the reasons set forth below.

## BACKGROUND

The present case is one of sixteen cases stemming from an IRS investigation of the respondents. Taxpayers Daniel B. Nelsen, Sr., Estelle Nelsen, Daniel B. Nelsen, Jr., Clifford D. Nelsen, and Cleon D. Nelsen sought and were granted leave to intervene as respondents in these cases. *United States v. Nelsen Steel & Wire Co.*, No. 77 C 4505 (N.D.Ill. January 13, 1978). Their primary ground for resisting enforcement of the summonses is the IRS' alleged bad faith in issuing them. Respondents claim essentially that Revenue Agent Donald L. Carpino, who was assigned to investigate their affairs, was a "stalking horse" for the IRS' Intelligence Division, now called the Criminal Investigation Division. The summonses involved in this suit, they say, were issued to secure evidence for a prospective criminal prosecution.

Respondents also resist enforcement of the summonses on the ground that the IRS, in reopening certain tax years, is subjecting them to an unnecessary, harassing investigation in violation of 26 U.S.C. § 7605(b). Section 7605(b) provides that the IRS may inspect a taxpayer's books only once for a particular tax year unless the District Director of the IRS, after investigation, notifies the taxpayer in writing that an additional inspection is necessary. Respondents contend that § 7605(b) also implicitly requires that the District Director have good cause to reopen an investigation, something which respondents claim is missing in this case.

We agreed to respondents' earlier request for limited discovery concerning whether the IRS acted in good faith in issuing its summonses and whether it had good cause to reopen its investigation of certain tax years. In particular, we directed the government to produce the reopening memorandum prepared by Agent Carpino at the start of his investigation and to submit Charles Miriani, the District Director of the IRS, for deposition. The government complied and also submitted Agent Carpino and Revenue Agent Thomas Culumber, who had previously audited respondents, for deposition.

Not satisfied with the information they obtained, respondents thereafter filed two motions to compel additional discovery. In their first motion, respondents ask us to compel Agent Carpino to appear for a further deposition to answer questions regarding the documents he examined in preparation for his audit, and whether he or any other IRS agent has audited any of Nelsen Steel & Wire's employees.[1] In their second motion, respondents seek to depose Special Agent Worker, a member of the Intelligence Division who apparently spoke with Agent Carpino before the latter began his investigation of respondents. Additionally, respondents seek production of all docu-

---

1. More specifically, respondents seek the answer to the following questions: (1) "Subsequent to your assignment to audit the books and records of Nelsen Steel & Wire and prior to your going on the premises to perform said audit, what documents did you examine?" (2) The IRS has records which are purported to be copies of books or records of Nelsen Steel & Wire. What records or books are these? (3) "Did you or the Internal Revenue Service ever subsequently audit any employees' income tax returns for any years?" and (4) "Did the Internal Revenue Service inspect any other of Nelsen Steel & Wire's employees relating to [travel and entertainment expenses]?"

ments Agent Carpino examined prior to commencing his audit, all documents and work papers generated by Agent Carpino in the course of his audit, and all books or records in the IRS' possession which are purported to be those of Nelsen Steel & Wire.

Because *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), was at the time under advisement in the United States Supreme Court, we deferred ruling on these motions. Now that the Court has decided *LaSalle National Bank* we proceed to consider the motions. We shall discuss, first, the scope of discovery in IRS summons enforcement cases and, second, whether, in light of this, respondents are entitled to the additional discovery they seek.

### THE SCOPE OF DISCOVERY IN SUMMONS ENFORCEMENT CASES

■ Congress, in § 7602 of the Internal Revenue Code, authorized the IRS to use the civil summons process "for the purpose of ascertaining the correctness of any return or for the purpose of making a return where none has been made." *United States v. LaSalle National Bank, supra* at 310, 98 S.Ct. at 2364. Section 7602 permits the use of the summons process not only to ascertain a taxpayer's civil liability but to investigate fraudulent, and possibly criminal, conduct as well. *Id.* at 310–11, 98 S.Ct. at 2364–2365. At the same time, however, there are limitations on the use of the summons process. Congress did not intend the civil summons process to become a tool for criminal investigations or to broaden discovery in criminal cases. *Id.* at 312, 98 S.Ct. at 2365.

■ Until recently, the question of under what circumstances the IRS could use the summons enforcement power to investigate a taxpayer's affairs where the investigation might lead to criminal prosecution was unresolved. It is now clearly established, however, that the IRS may use the summons process to investigate possible criminal conduct so long as the summons is issued before the IRS recommends criminal prosecution to the Department of Justice, and so long as it acts in a good faith pursuit of the taxpayer's civil tax liability. *Id.* at 318, 98 S.Ct. at 2368. "Good faith" in this context requires not only that the inquiry into the taxpayer's affairs be conducted pursuant to an investigation of civil tax liability, but also that the information sought be relevant to that investigation, that the information is not already within the IRS' possession, and that the IRS follow the proper administrative steps. *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964).

■ As might be expected, *LaSalle National Bank's* resolution of the question as to what circumstances permit the IRS to use the civil summons process raises another question, the answer to which is not yet entirely clear: to what extent is a taxpayer entitled to discovery regarding the IRS' good faith, or lack of it, in a summons enforcement proceeding.[2] Discovery in such cases obviously must be limited if the enforcement process is to retain its summary character. *See United States v. Interstate Tool & Engineering Corp.*, 526 F.2d 59, 62 (7th Cir. 1975); *United States v. Church of Scientology*, 520 F.2d 818, 824 (9th Cir. 1975). At the same time, the taxpayer must be permitted some discovery if his right to challenge the IRS' good faith in issuing a summons is to have any meaning. The burden rests with the taxpayer, once the IRS has made a prima facie showing that it acted in good faith in issuing a summons, to disprove the IRS' assertions. *United States v. Powell, supra*, 379 U.S. at 58, 85 S.Ct. at 255. Without some discovery, however, the taxpayer will rarely if ever be able to prove that the IRS is engaged in a primarily criminal investigation.

One of the few courts to consider this problem since *LaSalle National Bank* has

---

**2.** The IRS cannot enforce its own summonses. When faced with a recalcitrant taxpayer, it must seek judicial enforcement of a summons.

concluded that a taxpayer is entitled to certain basic discovery. At a minimum, he is entitled to learn the identities of investigating agents, the date their investigation began, the date any agent filed a report recommending prosecution of the taxpayer, the date the District Chief of the Intelligence or Criminal Investigation Division received the recommendation, the date the Office of Regional Counsel referred the matter to the Department of Justice for prosecution, the dates of issuance of all summonses relating to the investigation of the taxpayer, and "the nature of any contacts, relating to and during the investigation, between investigating agents and officials of the Department of Justice." *United States v. Garden State National Bank*, 607 F.2d 61, 71 (3d Cir. 1979); *United States v. Genser*, 595 F.2d 146, 152 (3d Cir. 1979).

The answers to these questions should reveal whether the IRS has already made the decision to prosecute the taxpayer and is using the civil summons process primarily to gather evidence in furtherance of the prosecution. If this basic information casts suspicion on the IRS' purpose in issuing a summons—for example, issuance of summonses after the investigating agents have recommended prosecution, inordinate and unexplained delays in the investigation, or contacts between the investigating agents and the Department of Justice—the taxpayer is entitled to further discovery.[3] *United States v. Garden State National Bank, supra* at 71; *United States v. Genser, supra* at 152. But, the Third Circuit cautions, this discovery should be "carefully

tailored to meet the purpose of the inquiry." *United States v. Genser, supra* at 152.

■ We believe that the Third Circuit's approach to discovery in summons enforcement proceedings is a reasonable one. As we mentioned earlier, some discovery obviously is needed if taxpayers are to challenge the IRS' good faith in issuing summonses. At the same time, discovery must be circumscribed if the enforcement process is to keep its summary character. The Third Circuit's approach has the virtue of serving both these interests. It permits enough discovery to allow taxpayers to detect bad faith on the part of the IRS, if any exists, while not unduly prolonging the proceedings. Furthermore, this approach is flexible. It allows taxpayers to engage in expanded discovery in unusual cases where suspicion of an improper purpose is aroused.

Having concluded that the Third Circuit's approach to discovery in summons enforcement proceedings is valid, we shall apply its guidelines in the present case.

## DISCOVERY REQUESTS IN THE PRESENT CASE

In their motion to compel testimony, respondents seek, among other things, an order compelling Agent Carpino to identify the documents he examined prior to beginning his audit of Nelsen Steel & Wire, and to identify any documents in the IRS' possession which purport to be copies of various books and records of Nelsen Steel & Wire. Respondents argue that they are entitled to the information because it may

---

**3.** The Second Circuit has also grappled with the problem of discovery in summons enforcement cases. In *United States v. Marine Midland Bank of New York*, 585 F.2d 36 (2d Cir. 1978), the court held that a taxpayer resisting enforcement of a summons was not entitled to full dress discovery; but, where suspicions of an improper motive on the IRS' part are aroused, the taxpayer is entitled to some discovery. *Id.* at 38–39. In that case, in fact, the Second Circuit concluded that the taxpayer was entitled to some discovery, stating:

> The difficulty with the government's position here is that the IRS, which is in the better position to provide the information as

to its own institutional posture, has failed to do so. The Regional Counsel's letter to the taxpayers' counsel dangles before us the tantalizing information that the institutional wheels had started to grind out a criminal processing recommendation, but we are left in the dark as to how far the recommendation proceeded through the machinery. The revelation made is not enough to show either a recommendation to Justice or bad faith in the sense of abandonment of the pursuit of civil liability. It does sufficiently raise the issue, however, to call for more information before enforcement is ordered.

> *Id.* at 38.

enable them to challenge the IRS' good faith in issuing the summonses. They contend that, if the documents that Agent Carpino examined prior to his audit are copies of records the IRS is now summoning, respondents can challenge the summons on the ground that the summoned records are already in the IRS' possession. We disagree.

 Even if the IRS has copies of some or all of the documents it is now summoning, its request for the original documents would not indicate bad faith. The IRS always has the right to inspect original books and records and does not have to rely on purported copies which may have been altered, edited, or even falsified. *See United States v. Davey,* 543 F.2d 996, 1001 (2d Cir. 1976). The need to examine the original books and records is particularly great where, as in the present case, the IRS received its purported copies not from the taxpayers themselves but from informants whose reliability is unknown.

 Respondents also argue that they are entitled to information concerning documents purporting to be copies of Nelsen Steel & Wire's records because if these documents reveal fraudulent activities they may have induced Agent Carpino to conduct a fraud investigation rather than a civil investigation. This argument, however, ignores that in *LaSalle National Bank* the Supreme Court firmly rejected the idea that a single agent's intent to build a criminal case against a taxpayer indicates bad faith use of the summons process. As the Court noted, an IRS agent's decision to recommend prosecution is reviewed at several stages; this review protects a taxpayer against the "hasty or overzealous judgment" of an agent. *United States v. La-Salle National Bank, supra,* 437 U.S. at 315, 98 S.Ct. at 2367. Because of this protection, the Court refused to draw a line between permissible civil and impermissible criminal purposes based on an agent's personal intent, stating:

> To do so would unnecessarily frustrate the enforcement of the tax laws by restricting the use of the summons accord-

ing to the motivation of a single agent without regard to the enforcement policy of the Service as an institution. Furthermore, the inquiry into the criminal enforcement objectives of the agent would delay summons enforcement proceedings while parties clash over, and judges grapple with, the thought processes of each investigator. . . . [T]he question whether an investigation has solely criminal purposes must be answered only by an examination of the institutional posture of the IRS.

*Id.* at 316, 98 S.Ct. at 2367 (footnotes and citations omitted). Since, in the present case, Agent Carpino's personal objective in investigating respondents' tax affairs is irrelevant, respondents cannot resist enforcement on the ground that Agent Carpino may have intended only to try to develop a criminal case against respondents.

 Respondents also seek in their motion to compel Agent Carpino's answers to questions regarding possible IRS audits of Nelsen Steel & Wire employees. But respondents fail to state how these questions relate to the issue of the IRS' good faith in its investigation of Nelsen Steel & Wire. Since we do not see how these questions could shed light on this issue, we conclude that they are outside the scope of discovery in this case.

Turning to respondents' motion to compel discovery of specific documents, we find no merit in their demand. They first seek production of all documents, purported to be copies of Nelsen Steel & Wire's books, which Agent Carpino examined before beginning his audit. Respondents contend that they are entitled to these documents since they may be able to challenge the summonses on the ground that the IRS is summoning records it already has in its possession. This is essentially the same argument that respondents advanced in their motion to compel testimony discussed above. Our reasons for rejecting this argument earlier apply equally here.

Respondents also seek production of any information relating to the factual contentions in Agent Carpino's reopening memo-

randum. They contend that he made substantial errors in his memorandum recommending that the IRS reopen its investigation of Nelsen Steel & Wire.[4] Respondents presumably think that these documents might shed some light on whether the alleged errors were accidental or deliberate, and that deliberate errors might indicate bad faith.

Even if the documents indicate a deliberate error in Agent Carpino's reopening memorandum, however, and even if this establishes an improper motive on his part, Agent Carpino's state of mind, as previously indicated, is irrelevant to whether the summonses were issued in a good faith pursuit of respondents' civil tax liability. As discussed earlier, the institutional purpose, not an individual agent's objective, determines whether a summons was issued in good faith. Consequently, the issue here is not whether Agent Carpino recommended reopening the IRS' investigation of Nelsen Steel & Wire because he suspected that the company was engaged in criminal activity and wanted to put together a criminal case. The relevant issue is whether the IRS, knowing that Nelsen Steel & Wire was probably engaged in criminal activity, postponed recommending the case to the Justice Department until it could gather additional evidence of wrongdoing. Thus, Carpino's state of mind, even if he made intentional errors in his reopening memorandum, is irrelevant to the real issue in this case. In this connection, respondents cite no reasons to assume that he did, but seek to examine the underlying documents on the possibility they may be able to contend that the reopening memorandum is based in part on factual errors. This kind of fishing expedition is inconsistent with the expeditious discovery and limited scope contemplated by *LaSalle National Bank.*

Another argument advanced by the respondents in support of their request for information regarding the factual contentions in Carpino's reopening memorandum is based on § 7605(b) of the Internal Revenue Code. This section provides that the IRS may inspect a taxpayer's books for a particular tax year only once unless the District Director, after investigation, notifies the taxpayer in writing that it is necessary to reopen the inspection. According to respondents, this section impliedly requires that the IRS have good cause for reopening an investigation. Errors in the reopening memorandum in the present case, they contend, might indicate that the IRS did not have good cause to reopen the investigation of Nelsen Steel & Wire and, without good cause for reopening the investigation, the IRS could not issue the summonses in this case. Respondents contend that they are entitled to information supporting the factual contentions in the IRS' reopening memorandum so that they can determine whether the IRS had good cause to reopen its investigation of Nelsen Steel & Wire.

We reject respondents' argument for two reasons. First, respondents cannot resist enforcement of most of the disputed summonses in this case on the grounds that the IRS did not have good cause to reopen its investigation and, therefore, did not comply with the requirements of § 7605(b). Section 7605(b)'s restrictions on second inspections "appl[y] only to the taxpayer's own records, and not to records of third parties." *United States v. Chemical Bank,* 593 F.2d 451, 458 (2d Cir. 1979). Thus, the IRS need not investigate the need for a second inspection of records in a third party's hands, or even notify the taxpayer of their inspection. The IRS obviously does not have to find good cause to order a second inspection in such third-party cases. Since most of the summonses in the present

4. The IRS may inspect only once a taxpayer's books for a particular tax year unless the District Director, after investigation, notifies the taxpayer in writing that an additional inspection is necessary. 26 U.S.C. § 7605(b). Since the IRS had previously audited Nelsen Steel & Wire's books for some of the tax years under investigation at present, § 7605(b) required the District Director to determine the need for a second audit. Agent Carpino's reopening memorandum was part of the IRS' determination of whether a second inspection of Nelsen Steel & Wire's books and records for these years was necessary.

cases are directed at third parties' records, the absence of good cause to reopen its investigation is irrelevant so far as they are concerned.

◼ Second, we do not believe that a summons enforcement proceeding is the proper one in which to consider the issue respondents raise. It is true, as respondents point out, that the IRS can issue a summons only in good faith pursuit of a taxpayer's civil liability, and that good faith requires that the IRS follow the proper administrative steps. *See United States v. Powell, supra,* 379 U.S. at 58, 85 S.Ct. at 255. Respondents do not, however, argue that the IRS failed to follow the administrative steps prescribed in § 7605(b) in the present case; they admit that the IRS investigated the need for a second inspection and that it notified them of its decision to proceed with a second inspection. Instead, they argue that the IRS abused its discretion in concluding that a second inspection was necessary. In other words, respondents ask us to inquire not only whether the IRS followed all the proper administrative steps but whether, in doing so, it acted in good faith or abused its discretion.

We do not believe that a court in a summons enforcement proceedings should scrutinize every decision of the IRS at each administrative step, or second-guess the IRS' decision to reopen an investigation. For a court in a summons enforcement proceedings to inquire into the IRS' reasons for proceeding with a second inspection would greatly impede what is intended to be a summary proceeding. Furthermore, while it is clear that Congress intended for the IRS to have broad discretion in deciding whether to institute or reopen an investigation, it is not clear that Congress intended for district courts, as respondents ask, to supervise the IRS' exercise of this discretion.

Respondents, in support of their argument, cite the following passage from *United States v. Euge,* —— U.S. ——, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980):

As we emphasized in other cases dealing with § 7602 proceedings, the summoned party is entitled to challenge the issuance of the summons in an adversary proceeding in federal court prior to enforcement, and may assert appropriate defenses. See *Bisceglia, [United States v. Bisceglia], supra,* 420 U.S. [141], at 151 [95 S.Ct. 915, at 921, 43 L.Ed.2d 88]. The Service must also establish compliance with the good-faith requirements recognized by the Court, *United States v. LaSalle National Bank,* 437 U.S. 298, 318 [98 S.Ct. 2357, 2368, 57 L.Ed.2d 221] (1978), and with the requirement of § 7605(b) that "No taxpayer shall be subjected to unnecessary examinations or investigations . . . ." These protections are quite sufficient to lead us to refuse to strain to imply additional ones from the neutral language Congress has used in § 7602.

*Id.* at ——, 100 S.Ct. at 882. This somewhat ambiguous dictum does not support respondents' position. It is clear that the criteria enunciated in *LaSalle National Bank* remain applicable. Section 7605(b)'s proscription of "unnecessary" examinations prohibits examinations which are useless or not required under the circumstances, as, for example, examinations which are conducted after the statute of limitations has run, inspections of books already within the IRS' possession, or inspections whose sole purpose is to harass the taxpayer. Section 7605(b)'s reference to "unnecessary examination or inspections" does not prohibit examinations for which the IRS does not already have good cause to suspect fraud.

In fact, the Supreme Court has specifically rejected respondents' argument that section 7605(b) requires good cause for reopening an investigation. In *United States v. Powell, supra,* the Court stated:

We do not equate necessity as contemplated by this provision with probable cause or any like notion. . . . If, in order to determine the existence or nonexistence of fraud in the taxpayer's returns, information in the taxpayer's records is needed which is not already in the Commissioner's possession, we think the examination is not "unnecessary" within

the meaning of § 7605(b). Although a more stringent interpretation is possible, one which would require some showing of cause for suspecting fraud, we reject such an interpretation because it might seriously hamper the Commissioner in carrying out investigations he thinks warranted, forcing him to litigate and prosecute appeals on the very subject which he desires to investigate, and because the legislative history of § 7605(b) indicates that no severe restriction was intended.

*Id.* 379 U.S. at 53–54, 85 S.Ct. at 252–253.

We conclude, therefore, that a summons enforcement proceeding is not the proper one in which to raise the issue of whether the IRS has good cause to order a second investigation of a taxpayer under section 7605(b). Indeed, we doubt that a taxpayer can ever raise this issue. So long as the IRS has investigated and determined the need for a second inspection and has notified the taxpayer of its decision to proceed under section 7605(b) the conditions precedent to ordering a second inspection of the taxpayer have been met. Having rejected respondents' argument based on the IRS' alleged lack of good cause to reopen its investigation in this case, we deny respondents' request for information supporting the IRS' reopening memorandum.

█ In their motion to compel production, respondents also request production of documents generated by Agent Carpino during his audit, as well as any documents purported to be copies of Nelsen Steel & Wire's books and records. According to respondents, these documents might indicate that Carpino knew the taxpayers were involved in fraud. If so, the IRS' regulations required him to withdraw from the investigation instead of continuing with it; his failure to withdraw, and thus his violation of IRS regulations, would indicate bad faith on the part of the IRS.

Respondents apparently misunderstand the IRS' regulations, however. These regulations provide that if an agent discovers evidence of fraud, he must report it to the Intelligence Division "at the earliest opportunity." But, "at the earliest opportunity" does not mean the moment that he suspects fraud; "[i]t means at the earliest point after discovering *firm* indications of fraud." *United States v. Toussaint*, 456 F.Supp. 1069, 1070 (S.D.Tex.1978). Agent Carpino already has testified generally as to the kinds of documents and other information he had before him when he wrote his reopening memorandum. From his description of the documents, it is clear that he could not have found "firm indications of fraud." The documents were unauthenticated copies of records of Nelsen Steel & Wire, given to the IRS by informants who may or may not have been reliable. Under no circumstances could such documents have provided Agent Carpino with "firm indications of fraud" on the part of Nelsen Steel & Wire. Therefore, under the regulations, Agent Carpino was not obliged to withdraw from the investigation at that point.

█ Finally, respondents want to depose Agent Worker, a member of the Intelligence Division who interviewed several informants regarding Nelsen Steel & Wire's tax practices. Through Agent Carpino's deposition testimony, respondents learned that Worker interviewed several informants regarding Nelsen Steel & Wire's tax practices, prepared summaries of the interviews, and filed a report incorporating these summaries with the IRS' Service Center. According to Carpino, his only contact with Worker came when he asked Worker where the report could be found. Respondents urge that they need to depose Worker to corroborate Carpino's testimony that this was Carpino's only contact with Worker and the Intelligence Division. We see *no* reason for respondents to depose Worker. Requiring the IRS to corroborate its every statement is not in keeping with the limited discovery in summons enforcement cases. In the interest of keeping discovery to a minimum, courts need not give taxpayers resisting enforcement of summonses the right to cross-check the basic information to which they are entitled, absent something casting suspicion on this information. Since respondents have indicated nothing in

the present case giving them reason to doubt Carpino's story, they are not entitled to depose Agent Worker.

In connection with respondents' current discovery requests, it should be noted, as previously indicated, that they have already been given the reopening memorandum and deposed Charles Miriani, the IRS District Director who authorized the reopening, as well as Revenue Agents Carpino and Culumber who had previously audited respondents. This discovery is more than required either by *LaSalle National Bank* or the Third Circuit in *Garden State Bank* and *Genser.*

### CONCLUSION

In conclusion, we hold that taxpayers resisting enforcement of IRS summonses are entitled only to certain basic discovery, which we have outlined above, absent something that casts suspicion on the IRS' purpose for issuing a summons. Respondents in the present case have not uncovered any information suggesting an improper motive on the part of the IRS and, therefore, are entitled only to this basic discovery. Since the information respondents seek in their motions to compel testimony and to compel production goes beyond this basic discovery, we deny the motions. An appropriate order will enter.