**In Re APPLICATION TO TERMINATE GRAND JURY PROCEEDINGS Or in the Alternative to Suppress Evidence and to Disqualify the Assistant U.S. Attorney and Internal Revenue Service Special Agent Involved In Said Proceedings.**

**Civil Action No. 06–mc–151 (JAP).**

United States District Court,
D. New Jersey.

June 22, 2006.

Robert J. Alter, Sills Cummis Epstein & Gross, Newark, NJ, for Petitioner John Doe.

Robert J. Kipnees, Lowenstein Sandler PC, Roseland, NJ, for Petitioner Richard Roe.

Christopher J. Christie, United States Attorney, Grace H. Park, Assistant United States Attorney, Newark, NJ, for the United States.

## OPINION

PISANO, District Judge.

Before the Court is an application by Petitioners, John Doe and Richard Roe,[1] targets of an ongoing grand jury investigation, for an order terminating the grand jury proceedings, disqualifying the Assistant United States Attorney ("AUSA") and the Internal Revenue Service Special Agent ("Special Agent") involved in the investigation, and suppressing certain evidence.[2] For the reasons set forth below, Petitioners' application shall be denied.

## I. Factual Background

The relevant facts are straightforward and largely undisputed.[3] On or about April 20, 2004, the Internal Revenue Service ("IRS") issued two summonses (the "April summonses") to a third party financial institution (the "Bank") seeking documents relating to an investigation of Petitioners. The summonses sought certain records from the time period 1997 through 2002. The Bank produced documents in response to the summonses but, in addition to materials from the requested time frame, also included records from the years 2003 and 2004.

Consequently, sometime after its initial production of responsive documents, the Bank requested that the IRS issue supplemental summonses that would encompass the years 2003 and 2004. On June 10, 2004, the IRS issued two additional summonses (the "June summonses"). The April summonses and the June summonses appear identical in all material respects with the exception of the applicable time periods. After the June summonses issued, the Bank produced additional documents that were responsive to both the April and June summonses.

During the time between the issuance of the April summonses and the June summonses, specifically, on or about May 18, 2004, the IRS formally recommended to the United States Department of Justice ("DOJ") that it conduct a grand jury investigation of Petitioners. Shortly thereafter, the DOJ approved the matter for a criminal grand jury investigation.

In early 2006, Petitioners' counsel were advised that their clients were the targets of a grand jury investigation and learned for the first time the approximate date that the formal recommendation was made by the IRS to the DOJ. Shortly thereafter, Petitioners' counsel, discerning a possible violation of 26 U.S.C. § 7602, objected to the government with respect to the issuance of the June summonses. After an exchange of correspondence between the government and Petitioners' counsel, on April 6, 2006, the government issued a grand jury subpoena "requesting the same information requested by [the June] summonses." AUSA Affidavit at ¶ 9. Petitioners' application to this Court followed.

---

1. As this matter involves proceedings currently before the grand jury, all papers were filed under seal, and the proceedings before this Court were held in a closed courtroom. In order to preserve the anonymity of the parties, pseudonyms are used.

2. Although Petitioners captioned their application as if they were seeking certain relief "in the alternative," the substance of their papers requests all the relief stated.

3. The parties conceded the relevant chronology at oral argument.

## II. Legal Discussion

Petitioners argue that the June summonses were issued illegally by the IRS, and, consequently, the present grand jury proceeding should be terminated, the Special Agent and the Assistant United States Attorney involved in this matter should be disqualified, and any evidence obtained as a result of the summonses and the fruits thereof should be suppressed to permit the grand jury proceeding "to start anew without the tainted evidence and without the investigators tainted by such evidence." Pet. Brief at 10. In addressing this application, the question before this Court is two-fold whether the June summonses were issued illegally and, if so, whether such a violation entitles Petitioners to the relief they seek.

### A. Requirements of 26 U.S.C. § 7602

■ The IRS has the authority to issue summonses "[f]or the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax ..., or collecting any such liability," as well as for "the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws." 26 U.S.C. § 7602. However, as relevant to the present application, the agency's authority is expressly limited by § 7602(d)(1), which provides that "[n]o summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person." The statute defines one such point at which a "Justice Department referral is in effect" as the time when the IRS "recommend[s] to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person." 26 U.S.C. § 7602(d)(2).

There is no dispute that the IRS issued the June summonses after the DOJ referral was made with respect to Petitioners. Nevertheless, the government argues that there was no violation of § 7602 because the summonses were issued "in good faith and without any other improper purpose" in that the IRS did not issue the summonses "in furtherance of a purely criminal investigation." Gov't. Brief at 8. In so arguing, the government misapprehends the relevant precedent and the controlling statute.

■ It is not necessary for the Court to engage in a detailed discussion of the "good faith" requirement with regard to the issuance of an IRS summons. It is sufficient to note that the cases cited by the government in support of its argument, namely, *U.S. v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), *Donaldson v. U.S.*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), *U.S. v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) and *U.S. v. Genser*, 595 F.2d 146 (3d Cir.1979), do not support the government's position that good faith affects the validity of an IRS summons issued after a DOJ referral has been made. The reason is best summarized in *LaSalle National Bank*, which noted that, under *Donaldson v. U.S.*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), the *first* prerequisite for enforcement of an IRS summons is that it "must be issued before the Service recommends to the Department of Justice that a criminal prosecution, which reasonably would relate to the subject matter of the summons, be undertaken." *LaSalle National Bank*, 437 U.S. at 318, 98 S.Ct. 2357. If this prerequisite has not been met, it is not necessary to examine whether the good faith standard is met. *Id.*

■ Moreover, the government's argument ignores the plain language of the

controlling statute, which, notably, was amended after the dates of the decisions cited by the government. In 1982, Congress enacted the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L No. 97–248, 96 Stat. 324 (1982), which amended § 7602 in two significant ways

> First, it expanded the purposes for which the summons power could be used, to include criminal as well as civil tax investigations. *Moutevelis v. United States,* 727 F.2d 313 (3d Cir.1984). Second, it drew a "bright line" delineating where the summons power ended *at the point where an investigation was referred to the Justice Department for prosecution.*[4]

*See Pickel v. United States,* 746 F.2d 176, 183 (3d Cir.1984) (emphasis added). The Third Circuit has noted that by making this change, Congress codified the position of the dissenters in *LaSalle National Bank* and "intended to establish a mechanical test for determining the validity of the summons." *Id.; Moutevelis,* 727 F.2d at 314 ("These amendments codify the position of the dissenting justice in [*LaSalle National Bank*] that there should be a 'bright line' test for the validity of Internal Revenue Service summonses."). Consequently, under the amended statute, just as set out in earlier case law, the underlying purpose of the IRS in issuing the summons—or its "good faith"—is only an issue if the summons was issued prior to a Justice Department referral. As stated by the Third Circuit, "a summons is now enforceable if it is issued in good faith, *i.e.,* if it is for the purpose of inquiring into any offense connected with the administration or enforcement of internal revenue laws, and *if it is issued before there is a Justice Department referral." Pickel,* 746 F.2d at 184 (emphasis added).

There is no dispute that the June summonses were issued by the IRS after a Justice Department referral took place. Therefore, an inquiry into the agency's "good faith" is not necessary.[5] The Court finds that the June summonses were issued in violation of § 7602.

## B. Grand Jury Proceedings

Presently Petitioners are the subject of a continuing grand jury investigation. No indictment has issued. As discussed above, Petitioners argue that the appropriate sanction at this stage for the § 7602 violation is suppression of the evidence to the grand jury, termination of the ongoing grand jury proceedings, and disqualification of the Special Agent and the AUSA involved in the investigation. Thus, the grand jury proceedings may "start anew

---

**4.** Among other things, the 1982 Act added what is now subsection (d) to § 7602, which provides in the relevant part:

> (d) No administrative summons when there is Justice Department referral.—
>> (1) Limitation of authority.—No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person.
>> (2) Justice Department referral in effect.—For purposes of this subsection—
>>> (A) In general.—A Justice Department referral is in effect with respect to any person if—

>>>> (i) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws, ...

> 26 U.S.C. § 7602.

**5.** In response to the government's arguments with respect to good faith, Petitioners raised the issue of whether the IRS has the power to seek compliance with previously issued summonses after a Justice Department referral is made. In light of the Court's decision, it need not reach that issue.

without the tainted evidence and without the investigators tainted by such evidence." Pet. Brf. at 10.

Petitioners assert that this relief is possible under the Court's "supervisory powers" as discussed in *United States v. Williams,* 504 U.S. 36, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (supervisory power may be used where "misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions' "). The government, on the other hand, argues that (1) there is no legal basis for the relief sought by Petitioners because suppression of the evidence is inappropriate under *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (exclusionary rule does not apply to the use of evidence in a grand jury proceeding); and (2) in any event, the disputed documents have been requested pursuant to a grand jury subpoena and, therefore, an independent, taint-free basis for the evidence exists.

 As the Supreme Court in *Williams* made clear, the extent to which this Court has "supervisory powers" with respect to grand jury proceedings is exceedingly limited. The grand jury is an independent "institution separate from the courts, over whose functioning the courts do not preside." *Williams,* 504 U.S. at 47, 112 S.Ct. 1735. Belonging to no branch of the government, the grand jury "serves as a kind of buffer or referee between the Government and its people." *Id.* As a result of the "operation separateness" of the grand jury from the courts, the courts have been "reluctant to invoke the judicial supervisory power" with respect to grand jury procedure. *Id.* at 49–50, 112 S.Ct. 1735. This Court, being mindful that its supervisory power is to be used sparingly, concludes that it would not be a permissi-

ble use of the Court's supervisory power to grant Petitioners the relief they seek.

As the June summonses were issued two years ago, a presumption that underlies this application is that illegally-obtained evidence has been considered by the grand jury as part of its investigation. Therefore, relevant to the analysis is the question of whether a court may use its supervisory power to review the nature of evidence that has been presented to the grand jury. Under the governing precedent, it appears that a court's power to do so is questionable at best. It is well established, for example, that a court may not exercise its supervisory powers to dismiss an otherwise valid indictment on the basis that there was incompetent or illegally-obtained evidence presented to the grand jury. *See Williams,* 504 U.S. at 54, 112 S.Ct. 1735. As the Supreme Court has stated, " 'it would run counter to the whole history of the grand jury institution' to permit an indictment to be challenged 'on the ground that there was inadequate or incompetent evidence before the grand jury.' " *Id.* (quoting *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (indictment based on hearsay valid)). "This rule is so strongly enforced that evidence obtained in violation of the Fifth Amendment and in violation of the Fourth Amendment can be used before a grand jury without giving the district court power to dismiss an indictment." *U.S. v. Strouse,* 286 F.3d 767, 773 (5th Cir.2002).

Nor does it appear that the Court has the power to exclude illegally-obtained evidence from the grand jury. *See, e.g., United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (exclusionary rule not applicable in grand jury proceedings); *see also In re Grand Jury Proceedings (John Roe, Inc.),* 142 F.3d 1416, 1424 (11th Cir.1998) ("[I]t is doubtful

whether enjoining the grand jury from using [attorney-client privileged evidence] would be a permissible exercise of the court's supervisory power."). In *Calandra*, the Supreme Court addressed the issue of whether to extend the exclusionary rule to grand jury proceedings. The specific question in *Calandra* was whether a witness summoned to testify before a grand jury may refuse to answer questions based upon evidence obtained in an unlawful search and seizure. In declining to extend the exclusionary rule, the Court weighed the "potential injury to the historic role and functions of the grand jury against the potential benefits" of the application of the rule in the grand jury context. 414 U.S. at 349, 94 S.Ct. 613. The Court concluded that "extension of the exclusionary rule would seriously impede the grand jury," in that "suppression hearings would halt the orderly progress of an investigation and might necessitate extended litigation of issues only tangentially related to the grand jury's primary objective." *Id.*

The clear import of the above cases is that grand jury proceedings should not be subject to the disruption and delay that would undoubtedly flow from the recognition of a right to review the evidence considered by the grand jury. The Court, therefore, concludes that it would not be a permissible or appropriate use of its supervisory power to grant Petitioners' application. *Cf. In re Grand Jury Proceedings (John Roe, Inc.)*, 142 F.3d at 1425 ("Because the grand jury may consider incompetent or unconstitutionally-obtained evidence, and judicial supervision may not be sought to challenge an indictment is-

sued on the basis thereof, it does not seem permissible for a court to issue the injunction appellants propose, an order enjoining the grand jury from considering [attorney-client privileged evidence]."); *In re Grand Jury Investigation*, 445 F.3d 266, 272 (3d Cir.2006) ("[I]t does not appear that any court has actually gone so far as to discharge a grand jury in the face of an unlawful [grand jury] subpoena.")

■ Even if this Court had found otherwise, namely that an exercise of its supervisory power was appropriate here, it nevertheless would have denied the relief sought by Petitioners. As noted previously, the grand jury issued its own subpoena for exactly the same materials that were requested by the June summonses. The Court, therefore, finds that there is an independent, taint-free basis through which the grand jury may consider the disputed evidence.

■ The Third Circuit's decision in *United States v. Genser*,[6] relied upon heavily by Petitioners, does not alter the Court's conclusion that Petitioners are not entitled to the relief they seek. In particular, Petitioners argue that *Genser* stands for the proposition that "suppression is an appropriate remedy, whether at the investigatory phase or at trial." Pet. Reply at 4. Specifically, Petitioners point to the following

> To make available the remedy of suppression to taxpayers in cases such as the present is merely to ensure governmental compliance with the principles enunciated in Reisman, Donaldson, La-

---

**6.** For the sake of clarity, the Court notes that *Genser* was decided prior to the 1982 amendment to § 7602 that gave the IRS the ability to use its summons power for criminal as well as civil purposes. Interestingly, the *Genser* court made the following observation: "It is hard to imagine why Congress could not entrust criminal law enforcement of the Internal

Revenue Code to an executive branch department rather than or in addition to the Justice Department. The difference between a summons returnable before an IRS agent and a subpoena returnable before a grand jury is in the real world slight." *Genser*, 582 F.2d at 306 n. 26.

Salle, and the decisions of this circuit the IRS, in issuing administrative summonses under § 7602, may not act outside its statutory authority by garnering evidence in furtherance of a solely criminal investigation. If a court determines in the context of enforcement proceedings that a summons was illegally issued, it will deny enforcement of the summons. That summons is no less illegal merely because it escapes detection at the investigatory stage. The prophylactic principles which operate at the enforcement level are equally appropriate to the trial stage, and suppression is the only practical remedy at that point to cure the statutory abuse.

*Genser*, 582 F.2d at 308. *Genser*, however, does not further Petitioners' argument that suppression is appropriate under the current facts. When the *Genser* court contemplates that a party may seek relief in the "investigatory stage," it is contemplating an enforcement proceeding in which a court can deny enforcement of the illegal summons. *Id. Genser* did not involve the issue of suppression in the investigatory stage, particularly in the grand jury context where the grand jury has already had access to the disputed evidence. Rather, the court notes only that if the illegality is not detected in time to prevent enforcement of the summons, then suppression at trial may be the appropriate remedy. *Id.*

Thus, the Court's decision today does not leave Petitioners without a potential remedy for a statutory violation. Should the grand jury return an indictment, Petitioners may file a post-indictment motion for relief, including, as noted in *Genser*, a motion to suppress the use of the disputed evidence at trial. The Court concludes that the appropriate remedy at this point is not, however, imposition of the sanctions currently sought by Petitioners.

### III. Conclusion

For the reasons set forth above, Petitioners application is denied in its entirety. An appropriate order will follow.