UNITED STATES of America and Anthony Trezza, Special Agent, Internal Revenue Service, Petitioners,

v.

Gerald W. SPEZZANO, Respondent.

UNITED STATES of America and Anthony Trezza, Special Agent, Internal Revenue Service, Petitioners,

v.

William J. NEILD, Respondent.

UNITED STATES of America and Anthony Trezza, Special Agent, Internal Revenue Service, Petitioners,

v.

Frank V. AVERY, Respondent.

Nos. MISC. CIV–82–119T to MISC. CIV–82–121T.

United States District Court, W. D. New York.

Aug. 12, 1982.

David Rothenberg, Asst. U.S. Atty., Rochester, N.Y., for petitioners.

William J. Neild, Petralia, Neild & Webb, Rochester, N.Y., for respondent.

TELESCA, District Judge.

In this proceeding brought pursuant to 26 U.S.C. 7402(b) and 7604(a), the Internal Revenue Service (IRS) seeks judicial enforcement of three summonses requiring the production of certain records which are currently in the possession of the respondents. The three summonses were served upon the taxpayer, Frank Avery; the taxpayer's accountant, Gerald Spezzano; and the taxpayer's attorney, William Neild, Esq. All three summonses seek the production of the same documents: the accountant's original workpapers along with the accountant's original working drafts of several tax returns prepared by him for the taxpayer. The records are sought pursuant to an ongoing civil and criminal investigation of the tax liability of Avery.

Section 7602 of the Internal Revenue Code of 1954 authorizes the IRS to issue summonses to compel the production of records and the examination of witnesses for the purpose of determining civil tax liability. However, to insure that the IRS uses its summonses power within its authorized limitations, Congress did not confer upon the IRS the power to enforce its own summonses. Rather, Congress found it necessary to "provide protection from arbitrary and capricious action by placing the federal courts between the government and the persons summoned". *United States v. Bisceglia,* 420 U.S. 141, 151, 95 S.Ct. 915, 921, 43 L.Ed.2d 88 (1975). Consequently, in order to enforce a taxpayer summons, the IRS must, as it has done here, file an enforcement petition with the federal district court. 26 U.S.C. § 7402(b).

■ To be enforced by the court, the IRS summons must be issued in good faith and prior to an IRS recommendation to the Department of Justice for criminal prosecution. *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). Initially the government bears the burden of proving a *prima facie* case of good faith enforcement. Once the government has established its *prima facie* case, the burden shifts to the taxpayer who can prevail only by showing that enforcement of the summons would be an abuse of the court's process. *United States v. Powell,* 379 U.S. 48, 51, 85 S.Ct. 248, 251, 13 L.Ed.2d 112 (1964).

In challenging the enforcement of the instant summonses, the respondents have raised two distinct objections. First, they claim that all the documents required to be produced under the terms of the summonses are already in the possession of the IRS. Second, respondents allege the summonses were issued by the IRS solely to facilitate a criminal investigation of the taxpayer. These two objections will be discussed separately below.

## A. IRS POSSESSION OF THE REQUESTED DOCUMENTS

In *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), the Supreme Court set forth the elements the IRS must establish to carry their burden of demonstrating a *prima facie* case of good faith enforcement of the taxpayer summons. One of the elements is that "the information sought is not already in the possession of the Internal Revenue Service". *Id.* at 85 S.Ct. at 254.

In the instant enforcement actions, the taxpayer and the IRS are in disagreement over what documents, if any, have already been supplied to the government. Both sides agree that on or about October 20, 1982 the taxpayer's attorney, Mr. Neild, met with IRS special agent Anthony Trezza. At the meeting Trezza was allowed by Neild to examine and make copies of at least some of the workpapers the taxpayer's accountant generated in computing the taxpayer's tax liability. The respondents argue that because the IRS has copies of certain documents, there is no need for the taxpayer to supply the original documents themselves.

■ In *United States v. Davey* however, the Second Circuit held the IRS is entitled to inspect *original* books and records pursuant to its summons powers.

> Section 7602 does not speak in terms of duplicates, but of the records themselves—and for good reason. Where the accuracy of a taxpayer's return is being checked, the government is entitled to use the original records for purposes of verification rather than be forced to accept purported copies, which present the risk of error or tampering. The IRS should not be put in the position of having to prove such error or tampering before it may use the originals.

543 F.2d 996, 1001 (2d Cir.1976). Thus, even assuming that the taxpayer has already supplied copies of *all* the documents requested by the IRS, the government is nevertheless entitled to inspect the original documents, and such a request does not indicate bad faith. See *United States v.*

*Nelsen Steel and Wire Co.,* 485 F.Supp. 949 (N.D.Ill.1980).

The taxpayer has also argued that the accountant's original pencil drafts of his individual income tax return, his sales tax return and his payroll tax return need not be provided to the IRS because the government already has the information in the form of the actual returns filed with the IRS. Such an argument however, simply begs the real issue in this case. Section 7602 of the Internal Revenue Code allows the IRS to examine any books, papers, records, or other data which *"may be relevant"* in ascertaining the accuracy of any tax return. (emphasis added). The IRS need not guarantee that every document or item subpoenaed will in fact be relevant to their investigation of the tax liability of Mr. Avery. Rather, the scope of their statutory power is broad enough to include the right to compel the production of documents which "might throw light upon subjects under legitimate inquiry". *United States v. Acker,* 325 F.Supp. 857, 862 (S.D.N.Y.1971).

■ Applying these principles to the case at hand, it is clear that the arguments of the taxpayer must be rejected. The fact that the IRS already possesses the tax returns that were ultimately filed by the taxpayer does not necessarily mean that the accountant's pencil drafts of those returns are not relevant in ascertaining the accuracy of the taxpayer's returns. To the contrary, as the government has pointed out, if the entries on the tax returns which were ultimately filed with the IRS differ from the entries on the accountant's original pencil drafts of those returns, the accuracy of the filed returns are clearly drawn into question. Thus, the accountant's pencil drafts and work papers "may be relevant" in ascertaining the correct tax liability of Mr. Avery, and consequently must be produced for inspection. See *United States v. Daffin,* 653 F.2d 121, 124 (4th Cir.1981).

## B. IRS INSTITUTIONAL COMMITMENT TO PROSECUTE

■ The taxpayer has also argued that enforcement of the summons should be denied because the IRS has made an institutional commitment to prosecute him for tax fraud. There is no dispute that an IRS summons issued solely for the purpose of unearthing evidence of criminal conduct is invalid and unenforceable because such use is outside the scope of Section 7602. *United States v. Morgan Guaranty Trust Company,* 524 F.Supp. 24, 26 (S.D.N.Y.1981). "Nothing in Section 7602 or its legislative history suggests that Congress intended the summons authority to broaden the Justice Department's right of criminal litigation discovery or to infringe on the role of the Grand Jury as a principal tool of criminal accusation". *United States v. LaSalle National Bank,* 437 U.S. 298, 312, 98 S.Ct. 2357, 2365, 57 L.Ed.2d 221 (1977).

The Supreme Court has recognized that there exists no magic formula for ascertaining the moment at which the civil and criminal aspects of a tax fraud investigation begin to diverge. The tax code may impose civil penalties on taxpayer conduct which also amounts to criminal tax fraud. For example, a taxpayer who willfully files a false tax return is not only subject to the criminal fraud penalties of Section 7202 of the Code, but also may be liable for a civil penalty of 50% of any tax underpayment under Section 6653 of the Code. Thus, in drafting the tax law, "Congress has created a law enforcement system in which the criminal and civil elements are inherently intertwined". *LaSalle, supra* at 309, 98 S.Ct. at 2363.

■ Under the standards articulated by the Supreme Court in *LaSalle,* the taxpayer bears the burden of *disproving* the existence of a valid civil tax determination purpose in challenging the enforcement of an IRS summons. Abandonment of a civil tax purpose is conclusively presumed to have occurred when the IRS recommends criminal prosecution to the Department of Justice. In the instant enforcement actions there is no dispute that the IRS has not recommended to the Justice Department that Mr. Avery be criminally prosecuted.

■ The taxpayer may also demonstrate abandonment of a civil tax purpose *prior to* a Justice Department referral by proving that the "institutional posture" of the IRS is one of total abandonment of any interest in civil tax determination or collection. *LaSalle, supra* at 316, 98 S.Ct. at 2367; *United States v. Marine Midland Bank of New York,* 585 F.2d 36, 38 (2d Cir.1978). The Supreme Court has described the taxpayer's burden in this situation as a "heavy one".[1] *LaSalle, supra* 437 U.S. at 316, 98 S.Ct. at 2367. It is this precise burden which the taxpayer in the instant action bears, and in order to succeed in preventing the judicial enforcement of the summonses he must prove "the complete abandonment of any civil purpose" on the part of the IRS. *United States v. Jeff-Lewis Savings and Loan Assoc.,* 530 F.Supp. 623, 626 (N.D.N.Y.1982).

To meet the burden, the taxpayer has alleged that the abandonment of a civil tax purpose by the IRS is evidenced by the following: (1) he has already supplied "hundreds of documents" to the IRS, (2) the civil audit is now over nine months old, and (3) Special Agent Trezza requested and convened a "pre-referral conference" with the IRS District Counsel Office in connection with his investigation of the taxpayer.

The IRS's right to compel the production of relevant documents pursuant to their summons power has been discussed at length in Part A of this decision and need not be reiterated here. I find that the nature or number of documents requested by the IRS in this action is not in any way indicative of whether the Service has abandoned a civil tax determination purpose.

The taxpayer also alleges that IRS abandonment of civil tax liability should be inferred by the fact that the instant audit was begun some eight months ago and as of this date no assessment or determination of civil tax liability has occurred. Such an argument has been rejected by the Second Circuit in *United States v. Chemical Bank* where the summonses were issued by the IRS two and a half *years* after the taxpayer's audit began. "[I]t is not extraordinary for audit investigations to take a considerable amount of time [citations omitted], and the fact that the IRS is still actively pursuing the matter raises no presumption either way." 593 F.2d 451, 458, n. 7 (2d Cir.1979).

Finally, the taxpayer's claim that the pre-referral conference held between Special Agent Trezza and the IRS District Counsel's Office is indicative of an abandonment of a civil tax determination purpose must also be rejected. According to the sworn affidavit of Special Agent Trezza, the conference was requested in order to resolve "a legal issue which had arisen" during his investigation of the case. Requesting the assistance of the District Counsel when the Special Agent encounters actual or potential legal issues is not unusual in the course of a civil tax investigation and, in fact, such consultation is encouraged by the IRS. Section 9626 of the Internal Revenue's Special Agent Handbook states, in pertinent part, that "the assigned [District Counsel] attorney will also furnish legal advice and assistance on pre-referral and other matters as legal issues arise or are anticipated ... Office of [District] Counsel are our attorneys, and they must be consulted for legal advice and assistance".

1. The "heavy burden" the taxpayer bears under *LaSalle* has been described in blunter terms by several Court of Appeals. For example, in *United States v. Garden State National Bank,* 607 F.2d 61, at 67–68, (3rd Cir.1979), the Third Circuit, citing *LaSalle,* stated: "[W]here the IRS has *not recommended* criminal prosecution to the Justice Department and the investigating agent has *not recommended* prosecution to his superiors within the Service, the taxpayer bears an almost impossible burden to resist enforcement of the summons." (emphasis in original). The Fifth Circuit has held that before an investigating agent completes his investigation, the summons is "virtually unassailable". See *United States v. Harris,* 628 F.2d 875, 882 (5th Cir.1980).

The Second Circuit's view of the burden placed upon the taxpayer has not been much more forgiving. In *United States v. Marine Midland Bank,* the court stated: "*LaSalle* leaves the door open to a taxpayer (*although perhaps only slightly*) even if there has been no recommendation to the Justice Department." 585 F.2d 36, 38 (2d Cir.1978). (emphasis added).

Of course, District Counsel attorneys are also involved in the "processing of prosecution cases". *Id.* Nevertheless, the mere fact that a pre-referral conference was convened is not dispositive of the issue as to whether the IRS has completely abandoned a civil tax determination purpose.

 Moreover, Special Agent Trezza, in his affidavit, stated:

As of this date, I have not determined whether to recommend criminal prosecution in this case. I have not made any specific recommendation to any of my superiors nor to anyone else in Internal Revenue District Counsel. Furthermore, no such recommendation has been made by my superiors nor by the Internal Revenue District Counsel to the Department of Justice.... [T]he Internal Revenue Service has not made any decision to abandon the taxpayer's civil liability.

Affidavit of Agent Trezza, ¶¶ 21, 22. The taxpayer nonetheless, urges this court to convene an evidentiary hearing so that he be allowed to question Agent Trezza regarding the posture of his investigation.[2] A taxpayer must make a "substantial preliminary showing" that the IRS summonses were issued in bad faith before an evidentiary hearing need be held. *United States v. Morgan Guaranty Trust Co.,* 572 F.2d 36, 42 (2d Cir.) *cert. denied,* 439 U.S. 822, 99 S.Ct. 89, 58 L.Ed.2d 114 (1978). Conclusory allegations of bad faith and IRS impropriety are not enough to warrant an evidentiary hearing. *United States v. National Bank of South Dakota,* 622 F.2d 365, 367 (8th Cir.1980); *United States v. Garden State National Bank,* 607 F.2d 61, 71 (3rd Cir. 1979). After careful consideration of the affidavits and memorandum submitted in this matter, I see no benefit to be gained from an evidentiary hearing. See *United States v. Chemical Bank, supra* at 458; *United States v. Morgan Guaranty Trust Co.,* 524 F.Supp. 24, 27 (S.D.N.Y.1981).

**2.** Even assuming arguendo that Agent Trezza himself believed the summonses were issued in bad faith or for an improper purpose, the taxpayer has not met his burden under *LaSalle.* "The fact that one agent has an improper motive for the issuance of the summons does not

## CONCLUSION

In order to deny enforcement of the summonses, the taxpayer must demonstrate that the IRS has, in an "institutional sense" abandoned any interest in pursuing Mr. Avery's civil tax liability. This he has failed to do. Further, the allegations of the taxpayer, when considered in conjunction with the sworn affidavit of Special Agent Trezza, do not meet the substantial preliminary showing of bad faith required before this court will convene an evidentiary hearing. Accordingly, the petitioner's application to enforce these summonses is granted.

ALL ·OF THE ABOVE IS SO ORDERED.

mean that the purpose of the IRS investigation is similarly improper. An Agent's personal intent is not dispositive: it is the 'institutional posture' [of the IRS] that matters". *United States v. Chase Manhattan Bank,* 598 F.2d 321, 326 (2d Cir.1979).