David GILMARTIN, Petitioner,

v.

UNITED STATES INTERNAL REVE-
NUE SERVICE; Citibank (South Da-
kota) N.A.; Household Bank F.S.B.;
Pfizer Incorporated, Custodian of
Records; Citibank; Equifax (Atlan-
ta); Custodian of Records Chase Man-
hattan Bank; Equifax (Allen, Texas);
and Trans Union, Respondents.

David Gilmartin, Petitioner,

v.

United States Internal Revenue Service;
Nissan Motor Acceptance Corpora-
tion; and First National Bank, Re-
spondents.

David Gilmartin, Petitioner,

v.

United States Internal Revenue Service;
and Texas Christian University,
Respondents.

No. M–29 (MBM).

United States District Court,
S.D. New York.

Nov. 26, 2001.

David Gilmartin, New York City, Petitioner pro se.

Mary Jo White, Esq., United States Attorney for the Southern District of New York, Russell Yankwitt, Esq., Emily S. Reisman, Esq., Assistant United States Attorneys, New York City, for Respondents.

## OPINION AND ORDER

MUKASEY, District Judge.

Petitioner David Gilmartin, who has not filed a tax return since at least 1989 (Declaration of Alice Wong ("Wong Decl.") ¶ 2), petitions to quash 11 subpoenas served by respondent Internal Revenue Service ("IRS") on various financial and other entities that are also named as respondents. The subpoenas would compel production of documents that could provide information relating to Gilmartin's "income, expenditures, assets and liabilities for the relevant years, as well as evidence relevant to his outstanding liabilities." (Wong Decl. ¶ 4)

Gilmartin contends that the IRS is misusing the subpoenas because it has already decided to prosecute him criminally, and the IRS is authorized to issue the subpoenas in question only if no such decision has been made. He also seeks discovery in aid of that contention. For the reasons set forth below, the petitions are denied in all respects.

## I.

Of the summonses in question, the court lacks jurisdiction to deal with four. As to two—those served on Equifax and Trans Union—the court lacks jurisdiction because Gilmartin's motion is untimely.

According to the affidavit of Alice Wong, which Gilmartin does not challenge in this respect, both summonses were issued on June 21, 2001, and the same day Wong sent Gilmartin notice of both. (Wong Decl. ¶¶ 8, 9) Both required compliance by July 23, 2001. (*Id.*) Under 26 U.S.C. § 7602, the Internal Revenue Service ("IRS") is authorized to issue administrative summonses to collect information relevant to determining a taxpayer's liability for taxes, unless the case has been referred to the Justice Department for investigation by a grand jury, or unless the Justice Department has made a request for taxpayer information for the purpose of conducting such an investigation. 26 U.S.C. § 7602(a), (d)(1)(2). Under 26 U.S.C. § 7609(a)(1)-(3), and (c), the IRS was obligated to notify Gilmartin of the summonses in question because Trans Union and Equifax are third-party recordkeepers within the meaning of 26 U.S.C. § 7603(b), and Gilmartin could seek to quash subpoenas on such entities; moreover, such notice had to be sent within three days of service and not later than 23 days before the date fixed for compliance. The notice here was timely. Therefore, if Gilmartin wished to quash the summonses

he was required to commence a proceeding to do so "not later than the 20th day after ... notice is given in the manner provided in subsection (a)(2)." 26 U.S.C. § 7609(b)(2)(A). Gilmartin petitioned to challenge these subpoenas on July 23, 2001, 32 days after notice. Because the 20-day requirement defines the extent of the government's waiver of sovereign immunity, that requirement must be strictly construed, and the court lacks jurisdiction over petitions filed after the deadline. *See Villella v. United States*, No. 99 Civ. 3975, 2000 WL 968773, at *1 (S.D.N.Y. July 12, 2000), and cases cited therein.

The court lacks jurisdiction as well over the petition to quash the summonses on two other entities—Pfizer, Inc. and Texas Christian University—albeit for a different reason. As noted above, the statute permits a taxpayer to challenge a summons on a third-party recordkeeper. This feature of the statute arises from Congress's recognition of "the taxpayer's need to protect privacy interests potentially invaded by the summons." *Upton v. I.R.S.*, 104 F.3d 543, 546 (2d Cir.1997), and it represents a waiver of the usual immunity that protects the United States and its agencies from suit, *id.* at 545. By the explicit terms of the statute, if a summoned entity is not a third-party within the meaning of the statute, the taxpayer has no right to notice of the summons or to intervene to quash it. 26 U.S.C. § 7609(c)(2)(E)(i)-(ii). Neither Pfizer nor Texas Christian fits the definition.

The Pfizer summons was served on June 18, 2001, with compliance required by July 16, 2001. The Texas Christian summons was served on July 26, 2001, with compliance required by August 13, 2001. Gilmartin was not notified of either summons. (Wong Decl. ¶¶ 7, 17; Ex. A, K) Pfizer was summoned because it allegedly pays consulting fees to Gilmartin; Texas Christian

was summoned as an academic institution, and was asked to provide Gilmartin's academic records. (*Id.*) The statute defines ten categories of entities that are "third-party recordkeepers." 26 U.S.C. § 7603(b)(2)(A)-(J). These include banks and credit unions, consumer reporting agencies, persons extending credit through the use of credit cards or similar devices, securities brokers, attorneys, accountants, barter exchanges, regulated investment companies, enrolled agents and owners or developers of computer software source code (as elsewhere defined). The characteristics of such entities have been described as follows:

> Congress intended that a third-party recordkeeper would " 'be a person engaged in making or keeping the records involving transactions of other persons.' " [citations omitted] Third-party records have been defined as "those containing data about transactions between the taxpayer and parties other than the [third-party recordkeeper]." [citation omitted]

> \* \* \* \* \* \*

> However, when the administrative summons seeks records that pertain to transactions between the summoned recordkeeper and the taxpayer under investigation (and that do not concern the type of credit transactions contemplated by § 7609), the taxpayer does not have the right to notice, the right to intervene or the right to initiate a suit to prevent disclosure. For instance, an employer is not considered a third-party recordkeeper in its relationship to an employee. *See United States v. Bass*, 784 F.2d 1282, 1285-86 (5th Cir.1986); *Ponsford v. United States*, 771 F.2d 1305, 1308 (9th Cir.1985).

*Upton*, 104 F.3d at 546-47.

██ Because there has been no waiver by the United States of its sovereign

immunity as to summonses on entities like Pfizer, acting as an employer, and entities like Texas Christian in its capacity as an academic institution where Gilmartin allegedly studied, the court lacks jurisdiction to consider a challenge to those summonses.

## II.

The government does not dispute the court's jurisdiction to hear Gilmartin's challenge to the remaining summonses, although it does dispute his claim that they are in any way improper. In order to allow the IRS to oversee effectively a system of taxation that relies on self-reporting, Congress gave the IRS a "broad mandate to investigate and audit persons who may be liable for taxes." *United States v. Bisceglia*, 420 U.S. 141, 145, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975) (internal quotation marks omitted). To fulfill that mandate, Congress gave the IRS the authority to "summon the person liable for tax . . . or any other person . . . to appear before the Secretary . . . and to produce . . . books, papers, records, or other data." 26 U.S.C. § 7602(a)(2). In order to exercise this broad grant of authority, subject only to "the traditional privileges and limitations," *United States v. Euge*, 444 U.S. 707, 714, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980), the government need make only a threshold showing:

> that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed.

*United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). This minimal showing can be satisfied, as it has been here, by an affidavit from an IRS agent showing compliance with the *Powell* criteria. *United States v. White*, 853 F.2d 107, 111 (2d Cir.1988); Wong Decl. ¶¶ 2–4 (stating that Gilmartin has filed no tax returns since 1989, the IRS has issued various assessments, and the agent is seeking to gather information relating to Gilmartin's income, expenditures, assets and liabilities for the relevant years as well as his outstanding liabilities).

■ Once the government has satisfied the *Powell* criteria, and has shown that the IRS "in an institutional sense [has not] abandoned its pursuit of . . . civil tax liability," *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 319, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), the burden shifts to the taxpayer who would challenge a summons to "disprove the actual existence of a valid civil tax determination or collection purpose by the Service," *id.* at 316, 98 S.Ct. 2357.

Gilmartin's challenge to the propriety of the summonses in question is based on a variety of conclusory claims, all tending toward the conclusion that the IRS has no valid civil tax determination or collection purpose in issuing these summonses. His three petitions are identical in this respect. They allege that the IRS has classified him as a tax protester, that it is gathering evidence solely for a criminal prosecution, that it has either made a formal recommendation to the Department of Justice or has decided to do so, that the court must conduct an examination of each summons so as to determine the purpose of each, that the summonses have been issued in bad faith (Petitions at ¶¶ 5 A–F), and that the IRS failed to comply with various procedural requirements "of 26 USC § 7602, 7603, 7609, etc." (*id.* at ¶ 5G). The first petition appears to be a form on which Gilmartin filled in by hand his name, the date, and the defendant entities, and the next two are copied, as to the above, verbatim.

On the strength of these general allegations, Gilmartin seeks both discovery and a hearing.

 The agent's affidavit is quite specific in dealing with the above allegations. She avers as follows:

> Because my investigation has only just begun, neither I nor the IRS have yet made a decision to refer the matter to the Department of Justice ("DOJ"). The IRS makes a criminal referral to the DOJ only after several layers of review of the investigation have been completed. With regard to the investigation of Petitioner, we are nowhere near making such a referral. The first step in the process would be for me, upon completion of my investigation, to recommend referral. Because I have not completed my investigation, I have not yet decided whether or not to recommend referral. When if I do make such a recommendation, it will be reviewed by my supervisors, two representatives of the IRS's Office of Chief Counsel and Paul L. Mackalek, Special Agent in Charge, Criminal Investigation, New York Field Office. The ultimate decision to refer a matter to the DOJ rests solely with the Special Agent in Charge.

(Wong Decl. ¶ 5) In addition, she has averred specifically that Gilmartin has not been designated as a tax protester, noting not only that there is no evidence in the relevant files reflecting such a designation, but also that such a designation has been barred since 1998. (*Id.* at ¶ 6) Certainly, the issuance of the summonses by the IRS's Criminal Investigation Division does not warrant the conclusion that they have been issued in bad faith. *Villella*, 2000 WL 968773, at *4.

In the face of the allegations in Agent Wong's declaration, neither a hearing nor discovery is warranted. *See, e.g., United States v. Tiffany Fine Arts, Inc.*, 718 F.2d 7, 14 (2d Cir.1983) (no discovery or hearing warranted absent substantial preliminary showing of alleged abuse), *aff'd on other grounds*, 469 U.S. 310, 105 S.Ct. 725, 83 L.Ed.2d 678 (1985), and cases cited therein; *United States v. Spezzano*, 559 F.Supp. 631, 636 (W.D.N.Y.1982). Thus, Gilmartin's second thought, expressed in his October 23, 2001 letter to the court, in which he discloses that he would have wished to conduct the examination of Agent Wong, is irrelevant.

For the above reasons, the petitions to quash summonses are in all respects denied.

SO ORDERED.